## In the Matter of the Discipline of Two Attorneys.

Suffolk. October 2, 1995. - January 8, 1996.

Present: Liacos, C.J., Wilkins, Abrams, Lynch, & Fried, JJ.

*Attorney at Law*, Disciplinary proceeding, Use of confidence or secret, Representation of differing interests, Fiduciary duty, Conduct prejudicial to administration of justice, Informal admonition. *Escrow. Words*, "Likely to be detrimental to client."

The Board of Bar Overseers rightly determined that two attorneys violated S.J.C. Rule 3:07, Canon 4, DR 4-101 (B) (3) and Canon 5, DR 5-105, by their simultaneous representation of both the buyer of real estate and a judgment creditor of the seller and by their use of information obtained in representing the buyer to attach proceeds of the sale for the benefit of their creditor client. [623-626]

The Board of Bar Overseers rightly determined that two attorneys acting as escrow holders, who without disclosure set in motion a process to deny a party to the escrow agreement a portion of the funds to be held in escrow and to transfer those funds to a client of the escrow holders, violated a fiduciary duty to that party to the escrow agreement. [626-627]

Discussion of cases considering an attorney's conduct as prejudicial to the administration of justice, as that term is found in S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5). [627-629]

This court declined to rule that two attorneys' breach of their duty as escrow holders, in circumstances which involved no egregious conduct and which did not undermine the legitimacy of the judicial process, violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5). [629]

The appropriate level of discipline to be imposed in the novel circumstances of two attorneys' violations of S.J.C. Rule 3:07, Canon 4, DR 4-101 (B) (3) and Canon 5, DR 5-105, was an informal admonition, the lowest possible level of private discipline. [629-630]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on January 12, 1995.

The case was reported by *Wilkins*, J.

*David G. Cohen* (*Charles S. Cohen* with him) for the respondents.

*Bruce T. Eisenhut*, Assistant Bar Counsel.

WILKINS, J. Two attorneys, partners in a law firm, have declined to accept the recommendation of the Board of Bar Overseers (board) that they be administered private reprimands.[1] Their disciplinary problems arose because in 1991 they (a) simultaneously represented both the buyer of real estate and a judgment creditor of the seller and (b) used information obtained in representing the buyer to attach proceeds of the sale for the benefit of their creditor client.

We agree with the board that the two attorneys violated S.J.C. Rule 3:07, Canon 4, DR 4-101 (B) (3), as appearing in 382 Mass. 778 (1981), concerning the use of a client's secrets for the advantage of another, and S.J.C. Rule 3:07, Canon 5, DR 5-105, as appearing in 382 Mass. 781 (1981), concerning multiple employment in which a lawyer would be likely to represent differing interests.[2] When the two attorneys declined to accept the proposed private reprimands, the board filed an information in the Supreme Judicial Court for Suffolk County. A single justice reserved decision and reported the matter to the full court to consider whether the two attorneys had violated disciplinary rules as the board ruled and, if so, what discipline, if any, should be imposed.[3]

We set forth the significant facts to which the attorneys and bar counsel have stipulated. In December, 1991, the two

---

[1] The firm is a professional corporation, and the two attorneys are shareholders. For the purposes of this proceeding, the difference is immaterial. The two attorneys agree that within their firm they alone are responsible, and equally so, for any violation of the disciplinary rules asserted in this proceeding.

[2] The board's report erroneously refers to DR 5-101, but it is apparent from the board's discussion and the petition for discipline that the relevant rule is DR 5-105.

[3] This proceeding, based on a complaint submitted by bar counsel in 1992, is governed by the procedure in effect prior to July 1, 1993. See Rules of the Supreme Judicial Court, 415 Mass. 1301, 1302 (1993). The substantive rules of discipline are the same under the current and former procedures.

attorneys obtained a District Court judgment of almost $17,000 against Diane Cosenzi (Cosenzi) on behalf of Lorac Leasing Corp. (Lorac). On May 10, 1991, prior to the commencement of that action, Cosenzi had fraudulently conveyed real estate she owned in Longmeadow to her mother.

Approximately two months before judgment was entered against Cosenzi, the two attorneys had undertaken to represent Howard and Christine Hausman (Hausmans) in the purchase of property in Longmeadow from a Vera Sadallah. The firm's "conflict check" showed no problem. The attorneys did not know, nor did they have any reason to know, that Sadallah was in fact Cosenzi's mother, the transferee of the property that the Hausmans sought to acquire. In November, the attorneys undertook a title examination, and a review of the abstract on December 18 disclosed that the property that the Hausmans had agreed to purchase had been owned by Cosenzi and fraudulently conveyed by her to her mother for one dollar. On December 20, counsel for Sadallah and Cosenzi advised the attorneys that Sadallah would transfer the property to Cosenzi prior to the closing, which was scheduled for December 26.

The attorneys and other lawyers in their firm discussed the appropriate course of action to take in view of their simultaneous representation, through no fault of their own, of a judgment creditor of the seller of real estate, Lorac, and the prospective purchasers of that real estate, the Hausmans. The attorneys did not withdraw from either representation, or from their intended role at the closing as the settlement agent for the lender and the Hausmans. They did not inform the Hausmans that they represented Lorac. They did not seek advice from outside counsel or from bar counsel.

On December 20, 1991, the attorneys moved ex parte on behalf of Lorac in the District Court for an $18,000 trustee process attachment of expected proceeds from the sale of Cosenzi's property. The process was to be served on the attorneys' firm, which expected, pending the recording of the deed and other documents, to hold the proceeds of the anticipated sale of the Longmeadow property. A judge allowed the

motion. The attorneys did not obtain a real estate attachment on the Longmeadow property. The attorneys were, therefore, taking the risk that their firm would be able to hold the settlement proceeds for a sufficient time after the deed to the Hausmans was recorded, and before the proceeds were distributed to the seller, to enable a deputy sheriff effectively to serve the trustee summons on the firm.

The closing took place in the morning of December 27 at the attorneys' firm, which acted as settlement agent. An associate in the firm handled the closing on behalf of the firm and informed the seller's lawyer that the firm would record the necessary papers and that the seller's net proceeds would be available at about noon. The deed and other papers were recorded before 11:40 A.M., when a deputy sheriff served the trustee summons on the firm's treasurer. A few minutes later, one of the attorneys advised the office of seller's counsel that the settlement proceeds would be $18,000 less than the amount set forth in the settlement statement. Lorac's judgment was subsequently satisfied out of the funds retained by the attorneys' firm. The matter came to bar counsel's attention when a District Court judge referred the matter to him, after he denied a motion of the seller Cosenzi to dismiss the trustee process.

A hearing committee of the board concluded that the attorneys' failure, as escrow holder, to disclose the impending service of trustee process was prejudicial to the administration of justice in violation of S.J.C. Rule 3:07, Canon 1, DR 1-102, as appearing in 382 Mass. 769 (1981). The hearing committee agreed with bar counsel that the Hausmans and Lorac had potentially differing interests, but concluded that it would have been a disservice to both clients to require either to seek new counsel a week before the closing. The hearing committee also recognized that the attorneys' conduct involved the improper disclosure of client secrets.

The hearing committee recommended that no discipline be imposed. No client was harmed. No client complained. The attorneys obtained no undue financial benefit. The committee concluded that neither it nor bar counsel was able to identify

what the two attorneys should have done in the specific circumstances. Bar counsel appealed from the hearing committee recommendation.

The board rejected the hearing committee's recommendation of no discipline and ordered that a private reprimand be administered to each attorney. In addition to identifying violations of DR 4-101 (B) (3) (use of secrets) and DR 5-105 (improper multiple representation), which we have already mentioned, the board ruled that the two attorneys violated their fiduciary duty as escrow holder and consequently violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981), by engaging in conduct prejudicial to the administration of justice. We shall consider each of these disciplinary rules in turn and then shall consider the level of discipline that should be imposed for those violations that we conclude did occur.

1. *DR 4-101 (B) (3).* The board properly decided that the two attorneys violated DR 4-101 (B), which states that "a lawyer shall not knowingly . . . (3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure." The attorneys used information that they obtained from their buyer-clients, the Hausmans, concerning the date and place of the closing, the seller's name, the purchase price, and net proceeds of the sale. They did so for the advantage of Lorac, their creditor-client, without the Hausmans's consent. The significant question is whether that information was a "confidence or secret" of the Hausmans. " 'Confidence' refers to information protected by the attorney-client privilege under applicable law." S.J.C. Rule 3:07, DR 4-101 (A), as appearing in 382 Mass. 778 (1981). There is no claim that the information that the two attorneys used was protected by the attorney-client privilege.

A " 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4-101 (A). The attorneys certainly used "information gained in the

professional relationship" with the Hausmans. The Hausmans did not request that the information be held inviolate, nor does it appear that the disclosure of the information would have been embarrassing to the Hausmans. Thus, the question comes down to whether disclosure of the information "would be likely to be detrimental to the client."

Recently, this court endorsed the view that public disclosure of the secrets of a client is never the business of a lawyer, except in those rare instances when disclosure is explicitly permitted under S.J.C. Rule 3:07, Canon 4, DR 4-101 (C), as appearing in 382 Mass. 778 (1981). *GTE Prods. Corp.* v. *Stewart, ante* 22, 31 (1995). We have not, however, decided the meaning of the words "likely to be detrimental to the client." Cases elsewhere do not provide significant guidance. One commentator has suggested that a test of reasonableness should be used in deciding whether revealing information would likely be detrimental to a client. C. Wolfram, Modern Legal Ethics § 6.7.2, at 297 (1986).[4]

The attorneys' use of the information concerning the sale and closing to advance Lorac's interests in collecting its judgment against Cosenzi was detrimental to the interests of the Hausmans. The fact that the Hausmans' purchase was put at some risk by the collection procedure devised by the multiple attorneys was a detriment to the Hausmans. It was not necessary for the board to find that it was more probable than not that the Hausmans would suffer a loss because of the use of the secrets. It was inherent in the collection plan that the Hausmans' acquisition of the property was placed at a greater risk because the seller might learn of the plan to attach a portion of the proceeds and postpone or abandon the

---

[4]American Bar Association's Model Rule 1.6 (a) places a broader obligation of confidentiality on a lawyer by generally prohibiting the disclosure, without client consent, of information relating to the representation, without regard to whether the disclosure would be or might be detrimental to the client. One court, relying on concerns expressed by commentators, has read into rule 1.6 (a) a requirement that "[t]here must be the potential for some harm to the client's interest before an attorney will be considered to have violated the prohibition of [rule 1.6 (a)]." *Harris* v. *Baltimore Sun Co.*, 330 Md. 595, 608 (1993) (four-to-three decision).

sale.[5] The two attorneys' unauthorized use of information, derived from their representation of the Hausmans, to aid Lorac was contrary to the Hausmans' interests because it made their situation less secure. The risk created by use of the information was detrimental to the Hausmans' interests.

2. *DR 5-105.* The board rightly concluded that the attorneys violated DR 5-105. A lawyer must decline proffered employment and discontinue multiple employment if the acceptance of the proffered employment or the representation of multiple clients "would be likely to involve him in representing differing interests," with an exception (which requires the consent of each client) that has no application here. DR 5-105 (A) & (B). When the attorneys learned that Cosenzi was the true owner of the premises that their clients, the Hausmans, intended to purchase, conflicting responsibilities to Lorac and to the Hausmans presented a problem for the attorneys.

The interests of the two clients were "differing interests." See S.J.C. Rule 3:07, 382 Mass. 796 (1981), defining "[d]iffering interests" to "include every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." The Hausmans wanted to purchase the property without difficulty. Lorac wanted its judgment satisfied, which might have been most securely achieved by an attachment of the seller's real estate rather than by an attachment of proceeds of any potential sale. Lorac had an interest in the disclosure and use of the information that the attorneys obtained from their representation of the Hausmans. The interests of the Hausmans in time might call for avoidance of the sale, perhaps because of an arguable title defect, a financing problem, or a change of mind. Lorac might desire to pursue the Cosenzi property aggressively and not care about whether the sale was completed. The attor-

---

[5]In the third section of this opinion, we note that the two attorneys as escrow holders had a fiduciary duty to disclose to Cosenzi their conflict of interest concerning the funds to be held in escrow. Compliance with that requirement would certainly have put the sale at risk.

neys' enthusiasm for that aggressive action could be tempered by loyalty owed to the Hausmans. Because information about the sale was a secret of the Hausmans that, as we have held, the attorneys could not properly disclose, once the attorneys learned that the seller was Lorac's judgment debtor, the interests of the two clients, the Hausmans and Lorac, were inconsistent, and the attorneys' loyalty to each client was adversely affected by the conflicting joint representation.

3. *DR 1-102 (A) (5)*. The board also concluded that the attorneys' participation in the sale as escrow agents was prejudicial to the administration of justice and thus violated DR 1-102 (A) (5).[6] The attorneys contend that they violated no fiduciary duty as escrow agents and that, in any event, there was no prejudice to the administration of justice. We shall consider the two points in order.

The board concluded that the attorneys had a fiduciary duty to disclose to the seller Cosenzi any material fact that, if known, might have caused her not to agree to the escrow. Cosenzi was not a client of the attorneys. The issue here is the extent of an escrow holder's obligation to parties to an escrow agreement beyond the obvious obligation to carry out its terms. See *Greater Boston Real Estate Bd.* v. *Board of Registration of Real Estate Brokers & Salesmen*, 405 Mass. 360, 362 n.5 (1989); *Kaarela* v. *Birkhead*, 33 Mass. App. Ct. 410, 412 (1992) (escrow holder is not agent of either party but is fiduciary of each); Restatement (Second) of Agency § 14D (1958). Massachusetts cases have not discussed whether an escrow holder has any duty beyond fulfilling the terms of the escrow.

Some authority limits an escrow holder's duties to the terms of the escrow. See, e.g., *Gurley* v. *Bank of Huntsville*, 349 So. 2d 43, 45 (Ala. 1977); *Lee* v. *Title Ins. & Trust Co.*, 264 Cal. App. 2d 160, 162-163 (1968). Other authority extends an escrow holder's duty beyond compliance with the escrow agreement. See, e.g., *Maganas* v. *Northroup*, 135

---

[6]DR 1-102 (A): "A lawyer shall not: . . . (5) Engage in conduct that is prejudicial to the administration of justice."

Ariz. 573, 576 (1983) (duty to disclose known fraud); *Collins* v. *Heitman*, 225 Ark. 666, 673 (1955) (escrow holder may not take advantage of position to profit beyond agreed compensation); *Kitchen Krafters, Inc.* v. *Eastside Bank*, 242 Mont. 155, 162 (1990) (duty to make full disclosure of all material facts relevant to escrow); *American State Bank* v. *Adkins*, 458 N.W.2d 807, 811 (S.D. 1990) (escrow holder has duty to avoid any self-dealing that places personal interest in conflict with obligations to party to escrow).

We need not resolve the scope of an escrow holder's duties in all circumstances. The facts of a particular situation will be important in deciding the nature of an escrow holder's duties to the parties to the escrow. Surely, self-dealing by an escrow holder, such as an escrow holder's unauthorized collection from escrowed funds of a debt owed by a party to the escrow agreement, would be a breach of duty. We have no hesitancy in concluding that if, as was the case here, an escrow holder without disclosure sets in motion a process to deny a party to the escrow agreement a portion of the funds to be held in escrow and to transfer those funds to a client of the escrow holder, the escrow holder violates a fiduciary duty to that party to the escrow agreement.

It is a closer question whether DR 1-102 (A) (5) was violated by the attorneys' breach of duty as escrow holder, which caused no harm to any client and satisfied Cosenzi's obligation to the attorneys' creditor client. Certainly most situations in which an attorney's conduct has been held to be prejudicial to the administration of justice have involved judicial or adjudicative proceedings. See, e.g., *Matter of Finnerty*, 418 Mass. 821, 828-829 (1994) (attorney's intentional misrepresentation of financial worth to court); *Matter of Tobin*, 417 Mass. 92, 94, 96 (1994) (submission of false description of services rendered and false time records to court; misrepresentations to court and bar counsel); *Matter of McCarthy*, 416 Mass. 423, 423, 426-427 (1993) (eliciting false testimony and offering false documents before rent control board); *Matter of Neitlich*, 413 Mass. 416, 416, 419 (1992) (fraud on court by misrepresenting terms of client's

pending real estate transactions); *Matter of Palmer*, 413 Mass. 33, 33, 36-37 (1992) (charging excessive fee, filing probate account containing misrepresentations, and neglecting legal matter); *Matter of Orfanello*, 411 Mass. 551, 552-553, 555 (1992) (making ex parte communication to judge on behalf of another lawyer concerning case pending before that judge); *Matter of Clooney*, 403 Mass. 654, 657 (1988) (withholding information from court and violating court orders). Cf. *Roy* v. *Rubin*, 35 Mass. App. Ct. 633, 635-636 (1993) (attorney violated DR 1-102 [A] [5] when he failed to disclose to executor asset of estate being probated). In cases holding that DR 1-102 (A) (5) was violated where the connection to litigation has not been apparent, the basis for the violation has not been explained, and the question has been unimportant because of substantial violations of other provisions of the Code. See *Matter of Saab*, 406 Mass. 315, 319 n.4 (1989); *Matter of Kenney*, 399 Mass. 431, 434 (1987). In *Matter of Kerlinsky*, 406 Mass. 67, 74-75 n.6 (1989), cert. denied, 498 U.S. 1027 (1991), the court questioned whether an attorney's refusal to deliver certain property to his client violated DR 1-102 (A) (5), as the board had concluded, but passed on the issue because more serious violations had been proved.

We obtain some guidance concerning the definition of conduct prejudicial to the administration of justice from sources elsewhere. The Florida Supreme Court has said that "[t]he term is not so broad as to include all conduct which is illegal but rather those activities [such as bribery, perjury, misrepresentations to a court] 'which undermine[] the legitimacy of the judicial processes.' " *Florida Bar* v. *Pettie*, 424 So. 2d 734, 737-738 (Fla. 1983), quoting *Polk* v. *State Bar of Tex.*, 374 F. Supp. 784, 788 (N.D. Tex. 1974). The New Jersey Supreme Court has said that "on those few occasions when the rule has served as the sole basis for discipline, it has been applied only in situations involving conduct flagrantly violative of accepted professional norms." *Matter of Hinds*, 90 N.J. 604, 632 (1982). Without such limiting interpretations of DR 1-102 (A) (5), the rule presents the risk of vagueness

and arbitrary application. See C. Wolfram, Modern Legal Ethics § 3.3.1 at 87-88 (1986); 2 G. Hazard & W. Hodes, The Law of Lawyering, § 8.4:501, at 957 (2d ed. Supp. 1994), discussing Rule 8.4 (d) of the ABA Model Rules of Professional Conduct, which preserves the same language.

Because of the uncertainty of the law of the Commonwealth concerning the duties of the attorneys as escrow agents and, more particularly, because their conduct as escrow holders involved no egregious conduct and did not undermine the legitimacy of the judicial process, we decline to rule that the attorneys violated DR 1-102 (A) (5). It is true that they used the judicial system to obtain service of trustee process on their firm. There is no showing, however, of wrongdoing before the judge in obtaining the attachment. The attorneys' conduct did not prejudice the administration of justice in any large sense because a debt established in court was satisfied from funds of the debtor. On a more restrictive view, the processes of the court were used to take advantage of one client's secrets unethically to help another client. The better course, where possible, is to deal with alleged professional misconduct under specific rules, such as those that we have already discussed, rather than to invoke the general language of DR 1-102 (A) (5).

4. *Level of discipline.* The attorneys should receive the lowest possible level of private discipline, an informal admonition. Although the line between a private reprimand and an informal admonition is not easily drawn,[7] in the novel circumstances of this case we believe that the two attorneys need not be reprimanded but rather should be warned by the imposition of an informal admonition.

We have rejected the breach of the attorneys' fiduciary duty as escrow holder as a violation of DR 1-102 (A) (5) in

---

[7] The distinction was abolished, effective July 1, 1993, as to complaints submitted by bar counsel on and after that date. See Rules of the Supreme Judicial Court, 415 Mass. 1301, 1301-1302 (1993); S.J.C. Rule 4:01, § 4, as appearing in 415 Mass. 1302 (1993). Today, once formal charges have been instituted before the board, no private discipline may be imposed. See S.J.C. Rule 4:01, § 8 (2) & (3), as amended, 415 Mass. 1304 (1993).

this proceeding. There remains the use of client secrets and the representation of differing interests, each a disciplinary violation but neither virulent. It appears that Lorac was materially benefitted by the actions of the two attorneys and that the Hausmans were not harmed. Indeed, as a practical matter, the risk that the attorneys would disadvantage their clients by withdrawing from each representation was arguably as great as was the risk in continuing to represent them. As the board noted, these circumstances are entitled to weight in mitigation, but they do not absolve the two attorneys from the imposition of discipline.[8]

The two attorneys were not indifferent to the ethical dilemma. They did, however, not select the correct course to avoid violations of disciplinary rules. Absent client consent, the attorneys should have withdrawn from the representation of each client.[9] See S.J.C. Rule 3:07, Canon 2, DR 2-110 (B) (2), as appearing in 382 Mass. 774 (1981), mandating withdrawal if continued employment will result in violation of a disciplinary rule.[10]

A judgment shall be entered in the county court that the two attorneys shall receive an informal admonition.

*So ordered.*

---

[8]Adherence to the disciplinary rules simply would have meant that Lorac would not have obtained an undeserved benefit from the fortuitous circumstance that the Hausmans also retained the two attorneys.

[9]Because the conflict did not come to the attorneys' attention until after they were representing both Lorac and the Hausmans, DR 5-105 (B), concerning the discontinuation of multiple representation, is the disciplinary rule applicable here, rather than DR 5-105 (A) which concerns circumstances in which proffered employment should be declined.

The parallel but not identical rule in the American Bar Association Model Rules of Professional Conduct is Rule 1.7.

[10]The use of secrets is allowed with a client's informed consent. S.J.C. Rule 3:07, DR 4-101 (C) (1), as appearing in 382 Mass. 778 (1981). Representation of differing interests is permitted only with both clients' fully informed consent and if it is obvious that the lawyer can adequately represent the interest of each. DR 5-105 (C).