NRT New England, Inc.[1] *vs.* Ashby C. Moncure.

No. 09-P-1815.

Middlesex. May 13, 2010. - December 6, 2010.

Present: Kantrowitz, Cohen, & Vuono, JJ.

*Escrow. Fiduciary. Real Property,* Purchase and sale agreement. *Contract,* Provision for liquidated damages. *Damages,* Liquidated damages. *Consumer Protection Act,* Unfair or deceptive act.

In a civil action brought by a real estate broker (plaintiff) to determine the rights of the parties in funds that the plaintiff held as escrow agent in connection with a failed purchase and sale agreement it had brokered between the defendant seller and a potential buyer, the judge properly granted summary judgment in favor of the defendant, where the liquidated damages provision in the purchase and sale agreement was enforceable as a matter of law, and the defendant was entitled to receive the entirety of the funds held in escrow as a deposit on the failed purchase, which was a reasonable forecast of damages in the event of the buyer's breach of the purchase and sale agreement [400-401]; and where the plaintiff committed a breach of its fiduciary duty to the defendant when the plaintiff asserted a right to the monies held in escrow after accepting an assignment from the potential buyer of its interest in those funds in settlement of an unrelated debt [401-403]; further, the award of treble damages under G. L. c. 93A was proper, as was the award of attorney's fees and costs [403-404].

Civil action commenced in the Superior Court Department on November 2, 2005.

The case was heard by *Thayer Fremont-Smith*, J., on a motion for summary judgment.

*Richard P. McClure* for the plaintiff.

*Bruce D. Berns* for the defendant.

Vuono, J. This appeal concerns the scope of an escrow agent's fiduciary duties. The plaintiff, NRT New England, Inc., doing business as Coldwell Banker Residential Brokerage (Coldwell), acquired an interest in funds it held as escrow agent in connec-

[1]Doing business as Coldwell Banker Residential Brokerage.

tion with a failed purchase and sale agreement it brokered between the defendant seller, Ashby C. Moncure and Plain Road Co., LLC (Plain Road), a potential buyer. Thereafter, Coldwell brought this action to determine the rights of the parties in the escrow funds. In his answer, Moncure asserted counterclaims against Coldwell for breach of fiduciary duty and violations of G. L. c. 93A.

A Superior Court judge granted summary judgment in favor of Moncure, concluding that he was entitled to the escrow funds in their entirety as liquidated damages; that Coldwell had breached its fiduciary duty as an escrow agent by taking an adversarial interest in the funds; and that Coldwell's conduct was "unethical and unscrupulous" within the meaning of G. L. c. 93A, §§ 2 and 11. Finding further that Coldwell's actions were wilful and knowing, the judge ordered it to pay treble damages and awarded reasonable attorney's fees. On appeal, Coldwell argues that the judge overlooked a disputed issue of material fact that had an impact on the enforceability of the liquidated damages provision, and erred in determining that Coldwell had breached its fiduciary duties. Based on our de novo review of the record, we affirm.

*Facts.* The undisputed facts, viewed in the light most favorable to the nonmoving party, Coldwell, are as follows. In March, 2004, Coldwell and Moncure entered into an exclusive listing agreement to sell Moncure's property in Wayland (Wayland property). Soon thereafter, Plain Road, who also was represented by Coldwell, offered to purchase the Wayland property for $1,850,000, and Moncure accepted.

On April 1, 2004, Plain Road and Moncure entered into a purchase and sale agreement (agreement), prepared by Coldwell, which required Plain Road to deposit five percent of the agreed upon purchase price into Coldwell's escrow account, and to pay the balance at closing. The agreement contained a liquidated damages clause providing that, if "the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages, as SELLER's sole and exclusive remedy, . . . in equity or at law." As required by the agreement, Plain Road deposited a

total of $92,500[2] with Coldwell as escrow agent.[3]

On June 30, 2004, the scheduled date for closing, Plain Road was unable to tender the balance of the purchase price because of a failure to obtain financing. Moncure had intended to use the proceeds of the sale to close on another property (Glenn Oak property) on the same date. Concerned about the buyer's ability to close, Moncure, prior to the June 30, 2004, closing date, obtained alternate financing which permitted him to follow through with his plans.

On July 2, 2004, counsel for Moncure sent a letter to counsel for Plain Road asserting that it was in breach of the agreement and reserving Moncure's right to seek forfeiture of the deposit if a new purchase and sale agreement could not be agreed upon by July 14, 2004. No such new agreement was executed. Moncure thereafter relisted the property with Coldwell and it sold five months later, to a different buyer for a higher price ($1,895,000).

Meanwhile, Plain Road accrued a debt to Coldwell in the amount of $34,699 related to its sale of an unrelated property in Weston. In December, 2004, Coldwell accepted an assignment of Plain Road's interest in the deposit paid in connection with the failed purchase of Moncure's property in settlement of a claim based on this debt. Coldwell did not notify Moncure of the assignment until one month later when, as Plain Road's assignee, it asserted a right to the deposit and threatened litigation if Moncure did not agree to accept $2,500 to settle the dispute.[4] Moncure declined the offer and, on November 2, 2005, Coldwell commenced this lawsuit. One week before it filed its complaint, Coldwell placed the disputed funds with another escrow agent.

*Discussion.* "We review the entry of summary judgment under well-established standards, to determine whether the suc-

---

[2]Plain Road tendered a $1,000 deposit earlier to hold the offer, and then paid $91,500 the day the parties entered into the agreement. Thus, the total amount in escrow is $92,500.

[3]The agreement provided: "All deposits made hereunder shall be held in escrow by Coldwell Banker Residential Brokerage as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement."

[4]Moncure made a counteroffer of $18,000, which Coldwell rejected.

cessful party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law." *Souza* v. *Sheriff of Bristol County*, 455 Mass. 573, 576-577 (2010). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). "An appeal based on a summary judgment motion is subject to a de novo review by this court." *Lallo* v. *Szabo*, 75 Mass. App. Ct. 1, 4 (2009), citing *Fortenbacher* v. *Commonwealth*, 72 Mass. App. Ct. 82, 85 (2008).

1. *Liquidated damages.* Liquidated damages clauses providing that a real estate seller may retain the buyer's deposit in the event of a breach are a common real estate practice recognized in Massachusetts. *Kelly* v. *Marx*, 428 Mass. 877, 879 (1999). It is well settled that such provisions will be enforceable so long as "at the time the agreement was made, potential damages were difficult to determine and the clause was a reasonable forecast of damages expected to occur in the event of a breach." *Id.* at 878. "The burden of showing that a liquidated damages provision is unenforceable rests with the party challenging enforcement of the provision . . . ." *NPS, LLC* v. *Minihane*, 451 Mass. 417, 420 (2008), citing *TAL Fin. Corp.* v. *CSC Consulting, Inc.*, 446 Mass. 422, 423 (2006).

In an effort to carry its burden, Coldwell relies on the fact that Moncure obtained a "bridge loan" prior to the closing date, thereby insuring his ability to purchase the Glenn Oak property. Coldwell contends that, once this loan was secured, Moncure's potential damages were easily ascertainable and limited to the costs associated with procuring and servicing the loan. Therefore, Coldwell asserts, whether Moncure obtained the bridge loan before or after the agreement was signed constitutes a genuine issue of material fact precluding summary judgment.

We disagree. Coldwell's argument rests on the faulty premise that the *only* potential harm Moncure faced at the time the agreement was executed was his inability to close on the Glenn Oak property. In fact, this represented only one component of Moncure's risk in the event of a breach. As the judge noted, there was potential that costs relating to finding another buyer and waiting for an uncertain period of time before selling the property could arise. See *Kelly*, *supra* at 878, 882. Additionally, as Moncure testified in his deposition, he faced the considerable

risk associated with carrying the expense of two mortgaged properties indefinitely.[5] The fact that these potential harms did not materialize is, of course, wholly irrelevant to our analysis. See *NPS, LLC, supra* at 420, quoting from *Kelly, supra* at 878 ("we do not take a 'second look' at the actual damages after the contract has been breached").

Here, we find that a deposit of five percent of the purchase price was a reasonable forecast of damages in the event of the buyer's breach. Accord *Kelly, supra* at 882. Coldwell itself acknowledges (and in fact advertises) that this amount reflected the "industry norm" for this purpose. Its argument that such a sum is grossly disproportionate to a reasonable estimate of actual damages is particularly disingenuous in light of the fact that Coldwell both brokered and drafted the agreement. In sum, we agree with the judge's conclusion that the liquidated damages provision contained in the agreement was enforceable as matter of law and that Moncure was entitled to receive the entire deposit.

2. *Coldwell's fiduciary duties as escrow agent.* As we recently reaffirmed in *Zang* v. *NRT New England, Inc.*, 77 Mass. App. Ct. 665, 670 (2010), "[a]n escrow agent owes a fiduciary duty to both parties to the escrow agreement." See Restatement (Second) of Agency app. § 14D Reporters' Notes at 60 (1958). Conceding this point, Coldwell argues that any duty it owed to Moncure as escrow agent terminated once the Wayland property was sold to another buyer. This argument lacks merit. An escrow agent assumes a fiduciary duty to the parties to an escrow agreement when it accepts funds and deposits them into its account. See *Zang, supra* at 671. That duty — to both parties — exists as long as the funds remain, undisbursed, in the escrow agent's account. See *Matter of Hilson*, 448 Mass. 603, 614 (2007) (at a minimum, an escrow agent has "a fiduciary duty to hold the money for the seller pending appeal"). Assuming arguendo that Coldwell's fiduciary duties as Moncure's real estate agent terminated upon the subsequent sale of the Wayland property, the record is clear that Coldwell continued to hold the disputed

---

[5]We reject entirely Coldwell's wholly speculative argument that these risks were eliminated by the "hot and rising" real estate market in the spring of 2004.

escrow funds well past the date the Wayland property was sold. Thus, Coldwell remained under a fiduciary duty to Moncure as escrow agent.[6]

Coldwell's second argument on appeal is that, because it did not actually convert or remove the disputed funds from the escrow account, it acted completely within the bounds of its fiduciary duties as escrow agent. This argument requires us to revisit the scope of an escrow agent's fiduciary duties to a party to an escrow agreement.

The Supreme Judicial Court first considered the scope of an escrow agent's fiduciary duties in *Matter of the Discipline of Two Attorneys*, 421 Mass. 619 (1996). In that case, the issue was whether, and to what extent, an escrow holder's obligation to parties to an escrow agreement extended "beyond the obvious obligation to carry out [the escrow agreement's] terms." *Id.* at 626. The court held that, at a minimum, "self-dealing by an escrow holder, *such as an escrow holder's unauthorized collection from escrowed funds* of a debt owed by a party to the escrow agreement, would be a breach of duty" (emphasis added). *Id.* at 627. The court declined, however, to "resolve the scope of an escrow holder's duties in all circumstances[,]" suggesting that in future cases, "[t]he facts of a particular situation will be important in deciding the nature of an escrow holder's duties to the parties to the escrow." *Ibid.*

Coldwell argues that *Two Attorneys* is inapposite here because the "escrowed deposit was never accessed by [Coldwell], but remained in escrow throughout the proceedings." We reject this narrow reading of *Two Attorneys*. Nothing in that case limits cognizable breaches of duty to circumstances where an escrow agent has actually diverted the funds from an escrow account or has failed to carry out the precise terms of the escrow agreement. Moreover, given the situation presented, we have "no hesitancy" in concluding that, regardless of the fact that Coldwell never

---

[6]We note that if Coldwell believed that its fiduciary duties as escrow agent ended when the Wayland property was sold, then it should have disbursed the funds at that time. Furthermore, if it had questions as to the proper disbursement of funds, it could have filed a complaint at or near the time the disagreement over the ownership of the escrowed funds arose. See *Zang, supra* at 672 n.4. Coldwell did neither. Instead, it retained the funds for over a year and, as has been noted, acquired an interest in them.

actually disbursed the funds to itself, its actions constituted a violation of its fiduciary duties to Moncure. See *Two Attorneys, supra* at 627. Where, as here, an escrow holder obtains an adverse interest in escrow funds held on behalf of a client, it engages in self-dealing by placing its personal interests in conflict with its obligations to the beneficiaries. See *ibid.*, citing *Collins* v. *Heitman*, 225 Ark. 666, 673 (1955) (escrow agent was not permitted to compete with one of the "principals" in obtaining the subject matter). See also *Maxwell* v. *Massachusetts Title Ins. Co.*, 206 Mass. 197, 202 (1910) (fiduciary may not assume a personal interest antagonistic to his fiduciary obligation); *Mangiante* v. *Niemiec*, 82 Conn. App. 277, 284 (2004) (fiduciary duty of loyalty is breached when the fiduciary engages in self-dealing by using the fiduciary relationship to benefit his personal interest). Because the undisputed facts show that Coldwell was holding the funds when it took the assignment and asserted a right to the monies held in escrow, there exists no genuine issue of material fact that Coldwell breached its fiduciary duty. Therefore, summary judgment on this claim was appropriate.[7]

3. *G. L. c. 93A.* Given our conclusion that Coldwell breached its fiduciary duty, the G. L. c. 93A claim requires only brief discussion. "Unfairness [as well as unethical or unscrupulous conduct] acquires its character from the circumstances of each case." *Renovator's Supply, Inc.* v. *Sovereign Bank*, 72 Mass. App. Ct. 419, 429 (2008). The judge observed that the unethical nature of Coldwell's breach of its fiduciary duty was compounded by its failure to disclose its ongoing relationship with Plain Road; its demand for the entire amount of the deposit, which far exceeded Plain Road's debt; the inadequacy of its settlement offer; and the leverage it was able to exert as a result of retaining the funds. Neither Coldwell nor our de novo review has provided us with a reason to conclude otherwise.[8] Accordingly,

---

[7]The fact that Coldwell relinquished the funds one week prior to commencing litigation is of no consequence. Under the circumstances of this case, Coldwell's breach of its fiduciary duty occurred when it accepted the assignment of Plain Road's interest in the escrowed funds.

[8]In challenging the judge's determination that it engaged in unfair or deceptive acts in violation of G. L. c. 93A, Coldwell reasserts its claim that it did not breach its fiduciary duty because the underlying agency relationship with Moncure had ended before it took the assignment. We have already rejected this argument and need not address it again.

we affirm judgment awarding actual damages (the deposit), trebled under G. L. c. 93A, § 11,[9] and attorney's fees and costs.

Additionally, we allow Moncure's request for appellate attorney's fees and costs. In accordance with the procedure outlined in *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004), Moncure may, within fourteen days, submit an application for appellate attorney's fees and costs with the appropriate supporting materials.

*Judgment affirmed.*

---

[9]Coldwell does not contest the determination that its conduct was wilful and knowing. As has been noted, its argument focuses almost entirely on its position that it did not breach its fiduciary duty in the first place.