GEORGE C. MALONIS vs. ROBERT W. HARRINGTON.

Middlesex. September 9, 2004. - October 18, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Attorney's fees. *Contract,* Contingent fee agreement, Attorney, Unjust enrichment. *Damages,* Quantum meruit. *Attorney at Law,* Compensation, Contingent fee agreement.

Where a client had retained an attorney on a contingent fee basis in a personal injury matter, but discharged that attorney before settlement was reached and retained a second attorney (also on a contingent fee basis) in the same matter, the discharged attorney was entitled to recover from the successor attorney, on a theory of quantum meruit, the reasonable value of his efforts and contributions to the client's eventual recovery, given the shared understanding of all the affected parties that the discharged attorney's fees and expenses would be paid by the successor attorney from the contingent fee received after settlement of the case [696-699]; further, the amount of the discharged attorney's recovery, as determined by a Superior Court judge, was fully supported by the evidence [699-700].

Discussion of steps to be followed, under the Massachusetts Rules of Professional Conduct, when a client discharges one attorney before settlement is reached and retains another attorney on a contingent fee basis, in determining who, as between the client and successor counsel, bears the cost of paying the discharged attorney the fair value of his legal services and expenses. [700-703]

CIVIL ACTION commenced in the Superior Court Department on July 31, 1995.

After transfer of the case to the Lowell Division of the District Court Department by *Paul A. Chernoff,* J., the case was heard by *Thomas M. Brennan,* J., and then retransferred to the Superior Court Department, where entry of judgment was ordered by *Thomas P. Billings,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert W. Harrington,* pro se.

*Francis A. Gaimari* for the plaintiff.

GREANEY, J. We transferred this case here on our own motion

to review a judgment entered in the Superior Court holding the defendant, Attorney Robert W. Harrington, liable to the plaintiff, Attorney George C. Malonis, for Malonis's reasonable attorney's fees and expenses. The fees and expenses were incurred by Malonis in his representation of Marc J. Loiselle, under a contingent fee agreement, in a personal injury action against Browning-Ferris Industries, Inc. (BFI). Loiselle discharged Malonis and retained Harrington, also under a contingent fee agreement, to represent him. Harrington settled the case with BFI and refused to pay Malonis's claim for attorney's fees and expenses. We conclude that the judgment against Harrington should be affirmed based on the particular facts of this case. The broader question concerns who, as between the client and successor counsel, should pay a claim such as Malonis's when one lawyer is discharged and another retained. That question, we conclude, should not be resolved at this time with an across the board declaration by this court, but is best answered in each case by the client and successor counsel, after full disclosure by both discharged counsel and successor counsel as to the former's entitlement to be paid the reasonable value of services conferred on the client. The standing advisory committee on the rules of professional conduct may, after appropriate inquiry, recommend to us a revision of Mass. R. Prof. C. 1.5, as amended, 432 Mass. 1301 (2000), dealing with contingent fee agreements, that would clearly spell out counsels' obligations in these circumstances.

The background of the case is as follows. Loiselle suffered injuries on April 26, 1991, in a motor vehicle accident. The operator of the other vehicle was an employee of BFI. Within a few days of the accident, Loiselle retained Malonis to represent him in a personal injury action against BFI for a contingent fee of one-third the amount of any recovery received by Loiselle.[1] Malonis secured a tape of the accident scene from the police; obtained Loiselle's medical bills and records; communicated with BFI (a self-insurer); obtained payment for Loiselle of

[1]The record does not establish whether the contingent fee agreement between Loiselle and Malonis was in writing, as was required at the time by S.J.C. Rule 3:05 (4), as appearing in 382 Mass. 762 (1981), and is now mandated by Mass. R. Prof. C. 1.5 (c), as amended, 432 Mass. 1301 (2000). That factual issue is not material to our decision in this case.

personal injury protection (PIP) benefits; and sent Loiselle's medical bills and records to BFI. In early 1993, BFI made a settlement offer of $7,500, which Loiselle rejected. Malonis then prepared and sent a G. L. c. 93A demand letter to BFI, to which BFI responded by extending a settlement offer of $30,000 (including the PIP benefits already paid). This offer also was rejected by Loiselle.

In June, 1993, Malonis filed a complaint in the Superior Court against BFI on Loiselle's behalf. Written discovery was exchanged, and Loiselle was deposed and underwent an independent medical examination. As the litigation continued, Loiselle still complained of back pain. In April, 1994, on Malonis's recommendation, Loiselle was examined by an orthopedic surgeon, who recommended disc surgery. Malonis forwarded the surgeon's report to BFI. As a consequence of receiving the report, BFI decided to increase its settlement offer to $57,500, although it did not communicate that offer to Malonis. Settlement discussions that continued between Malonis and BFI focused on figures in the $60,000 to $80,000 range, but no agreement was reached.

On September 14, 1994, Loiselle discharged Malonis and engaged Harrington to represent him under a contingent fee agreement calling for one-third of the gross amount of the recovery. Harrington requested that Malonis forward his case file to him, and Malonis complied. On September 21, Malonis gave written notice to Loiselle, Harrington, and BFI that he would seek to establish an attorney's lien, pursuant to G. L. c. 221, § 50, on any recovery in the case. Between December 16, 1994, and March 27, 1995, Harrington sent Malonis four written requests for an itemized bill for his legal services performed for Loiselle with respect to the BFI case. On March 23, Loiselle himself sent Malonis a written demand "to submit a full and complete invoicing of your fees due you," and stating that "[i]t would be appreciated" if this were provided to himself, or to Harrington, on or before March 30, 1995.

In early April, Harrington completed a settlement with BFI for $57,500 (the figure that BFI had determined to offer the preceding year, but had not communicated to Malonis). Having received notice of Malonis's attorney's lien, and anticipating

that Malonis expected to receive a portion of the settlement proceeds, counsel for BFI reminded Harrington of the issue of Malonis's payment. Harrington assured BFI's counsel that he "would take care of Mr. Malonis."[2]

On April 4, BFI issued two checks: the first in the sum of $40,000, payable to Loiselle's wife, and the second in the sum of $17,500, payable to Harrington as attorney for Loiselle.[3] Harrington subsequently paid the $40,000 to Loiselle's wife and retained the $17,500 as a legal fee. On April 4, the same day that the checks were issued, Malonis sent Harrington an itemized statement of his hours and costs, claiming $10,320 in hourly fees and $1,035.80 in costs, for a total of $11,355.80. Harrington viewed this amount as "ridiculous" and responded to a G. L. c. 93A demand letter from Malonis with the words, "I will not tender one cent in settlement." Malonis offered to submit the dispute to fee arbitration, but Harrington refused. To date, Malonis has not been compensated for his legal services or expenses by either Loiselle or Harrington.

On July 31, Malonis filed a complaint in the Superior Court asserting claims against Loiselle, BFI, and Harrington with respect to his entitlement to payment for legal services performed for Loiselle in connection with the BFI case. A Superior Court judge allowed BFI's motion to dismiss the only two claims asserted against it (claims to enforce an attorney's lien on the settlement and for alleged violations of G. L. c. 93A), and Malonis has not appealed therefrom. That judge then remanded the case to the District Court, where the case was tried against Harrington on claims that (1) Harrington was unjustly enriched by failing to reimburse Malonis for his fees

---

[2]The judge in the Superior Court credited the District Court testimony of BFI's counsel that BFI's willingness to consummate the settlement was premised on Harrington's oral assurance that he would "take care of" Malonis. BFI's counsel confirmed his understanding that Harrington intended to pay Malonis in a letter to Harrington dated April 10, 1995, in which he wrote: "As per our conversation today, you will resolve any issue regarding a . . . fee owed to Attorney George Malonis." Two weeks later, BFI's counsel reiterated in a letter to Malonis that Harrington "has advised me that he will be in touch with you regarding the issue of your attorneys fee."

[3]This amount represents a modest reduction from the one-third of the total recovery (plus expenses) specified in the fee agreement between Loiselle and Harrington.

and costs out of his contingent fee; (2) by retaining the whole fee, Harrington had converted money belonging to Malonis; and (3) Harrington had committed an unfair and deceptive practice in violation of G. L. c. 93A. The District Court judge concluded that Harrington was under no obligation to share any part of his fee with Malonis and awarded no damages. The Appellate Division affirmed the judgment.

Final judgment in favor of Harrington entered in the District Court on July 9, 2001, and on Malonis's request, the case was retransferred to the Superior Court.[4] The case was submitted to the judge in the Superior Court as a "case stated," based on the record made in the District Court together with certain stipulated facts, the transcript of the trial testimony in the District Court, and the trial exhibits. The judge concluded in a written memorandum of decision that Harrington was liable to Malonis and entered judgment accordingly. This appeal followed.

1. The dispute may be resolved in favor of Malonis on the case stated record. The Superior Court judge determined that it was the shared "expectation" of all the affected parties that Malonis's attorney's fees and expenses would be paid by Harrington from his contingent fee. On the basis of that understanding, the judge concluded that Malonis was entitled to recovery from Harrington, on a theory of quantum meruit, for the reasonable value of his efforts and contributions to the eventual recovery. We essentially agree with the judge's reasoning.[5]

Loiselle was entirely within his rights to discharge Malonis. See *Herbits* v. *Constitution Indem. Co.*, 279 Mass. 539, 542 (1932) (uniformly recognized that client has unquestioned right to discharge attorney, with or without cause). The discharge terminated Malonis's right to recover on the contingent fee

---

[4]Before retransfer, a judge in the District Court allowed Malonis's unopposed motion to dismiss his only claim against Loiselle, who appears to have taken no part in the prior District Court proceedings.

[5]Malonis, apparently, did not assert his conversion claim at the District Court trial or before the Superior Court judge. The Superior Court judge concluded that his G. L. c. 93A claim had no merit, and Malonis does not now argue otherwise. We thus need not address the merits of either claim.

contract.[6] See *Opert* v. *Mellios*, 415 Mass. 634, 636 (1993). Thereafter, Loiselle had an obligation to compensate Malonis for the fair and reasonable value of services and skills expended on Loiselle's behalf, on the theory of quantum meruit. See *id.*; *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 250 (1993). The underlying basis for this legal obligation is derived from principles of equity and fairness, to prevent unjust enrichment of one party (the windfall of free legal services to the client) at the expense of another (the discharged attorney who expended time and resources for the client's benefit). See *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 794 (1986); *Salamon* v. *Terra*, 394 Mass. 857, 859 (1985).

However, the record clearly establishes that by the time settlement was reached with BFI, it was the reasonable expectation of all of the parties in this case that Harrington had assumed responsibility to pay Malonis. Loiselle, in his pro se answer to the complaint, stated that the case was settled "with the knowledge and understanding that Attorney Harrington was to see to [Malonis] at no cost to [Loiselle] whatsoever." BFI's counsel testified as to Harrington's specific assurance that he would "take care of" Malonis. His testimony on this matter is buttressed by letters to Harrington and Malonis reiterating his understanding that Harrington would pay Malonis out of his own $17,500 contingency fee. Malonis testified that although at the time of his discharge he had no direct communications with Harrington or Loiselle on the matter of his payment, he assumed (based in part on past interaction with Harrington) that discussions with Harrington would follow if and when the case settled.[7] Finally, there is no question that Harrington himself understood that Malonis was entitled to payment, as shown by

---

[6]There is no claim, and no basis in the record to conclude, that the discharge was in bad faith. See *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993), citing *Salem Realty Co.* v. *Matera*, 384 Mass. 803, 804 (1981) (recognizing that, after substantial performance, bad faith termination might permit attorney to recover under contingency fee contract).

[7]Malonis clearly expected that Harrington would pay him if the case settled. It is less clear what expectations he harbored if no settlement had been reached. Malonis testified that he and Loiselle had signed a written contingent fee agreement that explicitly provided he would be entitled to reasonable compensation (plus expenses and costs) in the event of his discharge from the case before its conclusion. Although Malonis was unable to produce the writ-

four written requests for an itemized bill for his legal services. Whatever his actual belief, Harrington's own words communicated to BFI's counsel an intention to pay Malonis a portion of his contingency fee. As noted by the judge, it is doubtful that BFI would have disbursed the settlement checks to Harrington without the latter's commitment to "take care of" Malonis.

Harrington is now obligated to compensate Malonis in quantum meruit for the value of his legal services. Given the expectations of the parties in this case, to conclude otherwise would allow Harrington to be unjustly enriched by permitting him to retain the entire fee when he, admittedly, was not the major force in obtaining the settlement. See *Salamon* v. *Terra, supra* ("injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations").[8]

Harrington contends that his enrichment was not unjust. As grounds for his contention, he points to (1) Malonis's failure to take steps to secure his entitlement to payment by submitting a timely itemized bill and by attending court proceedings to determine the existence and validity of the attorney's lien;

ten agreement at trial, see note 1, *supra,* he did produce a blank duplicate of a contingent fee agreement form that provided for reasonable compensation in the event of discharge that, according to Malonis, had been in use in his office in 1991. Although the blank form was entered in evidence as an exhibit, it was not included in the appendix submitted to this court.

On principle, the fact that an attorney was retained on a contingency basis, which assumes that no fee will be owed unless the attorney's efforts secure an outcome favorable to the client, should have no bearing on a discharged attorney's right to recover in quantum meruit. As a practical matter, however, a client who discharges a lawyer before the conclusion of an unsuccessful claim may have received little or nothing of value and should not fairly be burdened · with the obligation to pay his former counsel, over and above reasonable expenses and costs.

[8]Harrington claims that Malonis's failure to allege Harrington's promise to pay in the complaint now bars him from asserting the parties' understanding of this promise as a basis for recovery. This is incorrect. We have considered the reasonable expectations of the parties in the context of Malonis's (asserted) claim of unjust enrichment, on a theory of quasi contract, that is implied in law "for reasons of justice, without any expression of assent." *Salamon* v. *Terra,* 394 Mass. 857, 859 (1985), quoting 1 A. Corbin, Contracts § 19 (1963). Our decision does not rest on traditional contract principles or any (unasserted) related claims.

(2) the propriety of the contingent fee collected by Harrington "in light of the complications presented by this case"; and (3) the lack of evidentiary basis for the Superior Court judge's recognition of a "shared expectation" among the parties that Harrington would pay Malonis for his reasonable services. A reading of this case stated record, which includes the District Court trial transcript and the parties' stipulation of facts, refutes Harrington's position on all three points.[9]

We now consider the fair value of Malonis's quantum meruit recovery, mindful that "[t]he question of what is fair and reasonable compensation for legal services rendered is one of fact for a trial judge to decide." *Mulhern* v. *Roach*, 398 Mass. 18, 23 (1986). The judge assessed the fees ($10,320) and expenses ($1,035.80) set forth in Malonis's invoice and, quite properly, accepted them as fair and reasonable. The record demonstrates that Malonis invested substantial time and funds in the case, and his efforts contributed materially to the resulting $57,500 settlement.[10] Harrington concedes that BFI made the decision to offer that amount at a time when Malonis still was representing Loiselle. BFI's counsel estimated that Malonis had performed fully eighty per cent of the pretrial work and the settlement negotiations at the time of his discharge, and Harrington does not contradict that estimate. The point of dispute on appeal appears to be not the amount of payment due Malonis, but the

[9]As to the first, moreover, we note that, while perhaps inconvenient for Harrington, it was not unreasonable for Malonis, once discharged, to give notice of his attorney's lien and then wait until the actual outcome of settlement negotiations before submitting his invoice. See note 7, *supra.* There are multiple factors to be considered in determining what is an attorney's fair and reasonable measure of compensation in a case. Relevant factors include not only time spent, but the amount of the recovery, and the attorney's impact on the actual outcome. See *Mulhern* v. *Roach*, 398 Mass. 18, 24, 30 (1986). See also Mass. R. Prof. C. 1.5 (a) (4), 426 Mass. 1315 (1998). The latter two could not be ascertained until negotiations had concluded in a final settlement. We agree, however, that it would have been better practice for Malonis to respond to Harrington's inquiries on the subject, even if such a response did not specify a precise dollar amount.

[10]The judge pointed out that Malonis's invoice, reconstructed from his copy of the BFI case file and not from contemporaneous time records, set forth more conservative estimates of time expended on various tasks than ordinarily might be reflected in an attorney's file.

appropriate source of that payment. The amount set by the judge is fully supported.

2. We comment now on the broader question raised by the case. When a client discharges one attorney before settlement is reached and retains another on a contingent fee basis, who bears the cost of paying the discharged attorney the fair value of his legal services and expenses, the client or successor counsel?[11] Our resolution of this issue recognizes the highly fiduciary nature of the attorney-client relationship and duties on counsel imposed by the Massachusetts Rules of Professional Conduct, which became effective on January 1, 1998, including the duty to advise a client to the extent reasonably necessary to permit the client to make informed decisions about the representation, Mass. R. Prof. C. 1.4 (b), 426 Mass. 1314 (1998); the duty to communicate to a client the basis of a fee, Mass. R. Prof. C. 1.5 (b), 426 Mass. 1315 (1998), and Mass. R. Prof. C. 1.5 (c), as amended, 432 Mass. 1301 (2000); and, on termination of representation, the duty to take reasonable steps to protect a client's interests, Mass. R. Prof. C. 1.16 (d) and (e), 426 Mass. 1369 (1998). We state no new rule of law.

There is no question that a client must have absolute trust in the integrity, the judgment, and the ability of his or her attorney. When a client, for whatever reason, loses faith in his or her

---

[11]The parties have suggested that courts elsewhere are divided on the answer. Our own reading of the cited cases reveals that other courts have resolved similar disputes much as we do today, by reference to governing rules of professional responsibility and application of equitable principles to the specific facts of each case. See, e.g., *Saucier* v. *Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 106 (La. 1979) (one contingency fee to be allocated among various attorneys involved in handling claim in question); *Cohen* v. *Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 660 (1993) (discharged attorney entitled to percentage of judgment recovered in separate action on same claim brought by successor counsel in United States District Court); *Pryor* v. *Merten*, 127 N.C. App. 483, 487 (1997) (discharged attorney may proceed against new attorney for rightful share of total attorney's fees). But see *Adams* v. *Fisher*, 390 So. 2d 1248, 1251 (Fla. Dist. Ct. App. 1980) (in absence of specific agreement, client must pay both discharged attorney for quantum meruit value of services and substituted attorney contingency fee in accordance with contract); *Styer* v. *Hugo*, 422 Pa. Super. 262, 270-272 (1993), aff'd, 535 Pa. 610 (1994) (discharged attorney not entitled to portion of recovery from subsequent counsel, when record established no contribution by discharged attorney to ultimate settlement and no knowledge on part of subsequent counsel that former attorney expected payment).

attorney, the client has the unqualified right to change lawyers. See *Duggan* v. *Taunton*, 360 Mass. 644, 649 (1971); *Walsh* v. *O'Neill*, 350 Mass. 586, 590 (1966). "But the right of a client so to do has not much value if the client is put at risk to pay the full contract price for services not rendered and to pay a second lawyer as well." *Salem Realty Co.* v. *Matera*, 10 Mass. App. Ct. 571, 575 (1980), *S.C.*, 384 Mass. 803 (1981). The general rule in Massachusetts is that, on discharge, an attorney has no right to recover on the contingent fee contract, but thereafter, the attorney may recover the reasonable value of his services on a theory of quantum meruit. See *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993); *Mulhern* v. *Roach*, 398 Mass. 18, 23, 25 (1986); *Salem Realty Co.* v. *Matera*, 384 Mass. 803, 804 (1981).

In withdrawing from a case, a discharged attorney must take all reasonable steps to protect the client's interests, including surrendering papers and property to which the client is entitled, and discussing with the client the consequences of the discharge, including his or her expectation of being compensated for work performed.[12] See Mass. R. Prof. C. 1.16 (c) and (d). To the extent that the discharge is followed by the retention of another attorney on a contingent fee basis, the successor attorney also should discuss this expectation with the client and make clear, by specific agreement, who will be responsible to pay former counsel's reasonable fee. See Mass. R. Prof. C. 1.4 (b), and Mass. R. Prof. C. 1.5. The agreement, no doubt, will depend on the circumstances of each case. In the words of the Superior Court judge, "[i]f the case is an attractive one, successor counsel [may be] willing to commit to sharing his fee on some equitable basis with his predecessor; if he is not willing, the client may be able to find someone who is."

The significant point is that the matter should be resolved by express agreement with the client, based on a frank discussion of the matter, thus allowing an intelligent decision as to which course is in the client's best interests. Absent such express

---

[12]Comment [4] to Mass. R. Prof. C. 1.16, 426 Mass. 1369 (1998), cautions: "A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances."

discussion, it is likely (as occurred here) that the client will simply assume that both lawyers will be paid out of the single contingency fee, and will fail to appreciate the potential that fee claims above that amount may be made. Protection of the client's interests — and the client's ability to make a reasoned decision with respect to any settlement offers — requires that this important subject be addressed with clarity and specificity. Any fees to the client ultimately charged by either attorney, of course, whether or not contingent on the outcome, must be reasonable. See *Cambridge Trust Co.* v. *Hanify & King Professional Corp.*, 430 Mass. 472, 480 n.10 (1999); *Gagnon* v. *Shoblom*, 409 Mass. 63, 67 (1991) (fee may not be "plainly unreasonable"); Mass. R. Prof. C. 1.5 (a), 426 Mass. 1315 (1998) (fee may not be "illegal or clearly excessive"). A client should never be made to pay twice. To avoid disputes in the future, we would advise successor counsel, before he or she receives the case, to confer with the client on the issue and to execute a written agreement unambiguously identifying the party responsible for payment of former counsel's reasonable attorney's fees and expenses.

This position is not cast in stone. We recognize some potential for a conflict of interest to arise when the burden of advising a client of the obligation to pay a former attorney, and the need to identify the source of payment, falls on the shoulders of the only alternate candidate, or when an attorney approaches settlement negotiations knowing that a portion of his fee (fixed or, as here, as yet undetermined) is owed to one no longer involved with the case. Attorneys in this situation should never lose awareness that, in matters of fees, attorneys "are fiduciaries who owe their clients greater duties than are owed under the general law of contracts." *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 612 (1991), quoting Restatement (Third) of the Law Governing Lawyers § 46 comment b (Tent. Draft No. 4 1991).

The matter is one of importance to the bar, particularly to lawyers who represent clients pursuant to contingent fee agreements. The standing advisory committee on the rules of professional conduct may wish to study the issue by obtaining necessary comment from affected and interested parties and recommend to us whether rule 1.5 should be amended to

identify responsibility in these circumstances with any other necessary or appropriate safeguards. Until any such recommendations are made, the considerations and advice stated in this opinion shall govern the situation.

*Judgment affirmed.*