Welsh, J.
This action arises out of a dispute between two law firms as to whether the defendant firm, Gilmore, Rees, Carlson & Cataldo, P.C. (“Gilmore”), had a duty to account for and to reimburse the plaintiff firm, Wozniak and Padula, P.C. (“Wozniak”), for its fees and expenses for legal work done in a personal injury case.
Lisa Couch (“Couch”) initially retained Wozniak to represent her in a personal injury claim resulting from an automobile accident on October 23, 2001; she signed a contingent-fee agreement about a week after the accident. Wozniak continued to represent Couch until March 19,2003, at which time Wozniak received a letter from Gilmore stating that Couch had retained Gilmore to represent her in her accident claim. Couch came to Wozniak’s law offices and demanded her file. Wozniak complied promptly. In an attempt to secure its position to collect for the work it had performed, Wozniak notified Gilmore of its intention to assert a lien for counsel fees and expenses. G.L.c. 221, §50. Wozniak’s lien efforts failed because no action was ever commenced on Couch’s claim. See Elbaum v. Sullivan, 344 Mass. 662, 663 (1962). The matter was instead settled for $25,000.00 following negotiations between Gilmore and the insurance company. Although there was some discussion regarding fees and expenses between the two law firms, no agreement for apportionment was reached. The settlement proceeds were ultimately disbursed in accordance with the contingent fee agreement between Couch and Gilmore. Wozniak alleges in this action that an attorney in the Gilmore firm told the insurance company adjuster that the issue concerning the lien had been resolved. Wozniak has not been paid for its services.
The court allowed Gilmore’s Mass. R. Civ. R, Rule 12(b) (6), motion to dismiss Wozniak’s complaint for failure to state a claim upon which relief could be granted, and Wozniak has appealed that dismissal order. The complaint sets forth several theories of recovery which we deal with seriatim.[1]
1. A motion to dismiss for failure to state an actionable claim may be granted *50 only if it appears to a certainty that there is no set of facts that can be proven which would entitle the plaintiff to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The standard for measuring a complaint’s adequacy is an extremely lenient one, as a pleading need only “sketch the bare silhouette” of an actionable claim to survive Rule 12(b) (6) scrutiny. Brum v. Dartmouth, 44 Mass. App. Ct. 318, 322 (1998). In deciding a Rule 12(b) (6) motion lo dismiss, the court refrains from assessing the likelihood of proof being adduced in support of the claim. Id. at 322; Mmoe v. Commonwealth, 393 Mass. 617, 619-620 (1985). All presumptions as to credibility lie in favor of the pleader. Nader v. Citron, supra at 98.
2. Conversion. There was no error in so much of the judge’s Rule 12(b)(6) order which dismissed Wozniak’s claim for conversion. The essence of the tort of conversion is the exercise of wrongful dominion over the personal property of the plaintiff. Bleiken v. Stark, 61 Mass. App. Ct. 619, 622 n.2 (2004). Wozniak’s claim of entitlement to a share in the legal fee generated by the Couch settlement is at best a claim to a right of action rather than a right to certain specific personal property. In Discover Realty Corp. v. David, 2003 Mass. App. Div. 172, this Appellate Division held that a commission deemed owed was not personal property for purposes of an action for conversion. Id. at 174-175.
As noted, Wozniak’s effort to obtain a G.L.c. 221, §50 lien was unsuccessful because Couch’s personal injury claim was settled. The procedure to secure an attorney’s lien is statutory, Elbaum v. Sullivan, supra at 663 n.1, and the absence of an action defeats an attempt to secure the lien. Generally, intangible property not merged in, or evidenced by, a document may not be the proper subject matter of conversion. See Famology.com, Inc. v. Perot Systems Corp., 158 F. Supp. 2d 589, 591 (E.D. Penn. 2001).
3. Unfair and Deceptive Practices. The claim for relief under G.L.c. 93A, §11 also fails. Generally, only a client or someone standing in privity with a client can assert a G.L.c. 93A claim against an attorney stemming from legal services rendered. Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 462-463 (1997). For situations outside of the attorney-client relationship, the attorney must be shown to have acted in a business context for a non-client to have a cause of action. First Enters., Ltd. v. Cooper, 425 Mass. 344, 347 (1997). There was no allegation in this case of a commercial relationship between the two law firms; their sole contact appears to have been in connection with this litigation. That interaction alone is insufficient to warrant a finding of a commercial relationship. See L.B. Corp. v. Schweitze-Maududit Int'l, Inc., 121 F. Supp. 2d 147, 155 (D. Mass. 2000) (common thread of G.L.c. 93A cases is that plaintiff must allege some sort of business transaction between the parties for liability to attach). In the absence of a commercial transaction between the parties, it is clear that not every species of competitive practice which may be deemed odious falls within the ambit of G.L.c. 93A. See Arthur D. Little, Inc. v. East Cambridge Sav., 35 Mass. App. Ct. 734, 743 (1994). This is essentially a dispute between two law firms regarding apportionment of the proceeds of a settlement and does not entail unfair or deceptive acts or practices in the course of trade or commerce. Compare St. Paul Fire & Marine v. Ellis & Ellis, 262 F.3d 53, 67 (1st Cir. 2001) (attorney’s fraudulent scheme to dupe workman’s compensation insurer into paying benefits to which attorney’s client was not entitled found to have an effect on trade or commerce under G.L.c. 93A).
The alleged misrepresentation by a Gilmore attorney as to the status of the lien was not made to Wozniak, but to an insurance adjuster. As noted, no lien came into existence because no action was ever commenced. Thus the statement, if made, to the effect that the issue of the lien had been “addressed” was of no legal significance because there was no lien. Gilmore had no duty based upon an express contract to protect Wozniak’s entitlement to payment for legal services provided to *51 Couch.
4. Intentional Interference with Advantageous Relations. This complaint count alleged, inter alia, that Gilmore knew that Wozniak represented Couch and interfered with that contract of representation intentionally and by improper means or with improper motives. See Ayash v. Dana Farber Cancer Inst., 443 Mass. 367, 394 (2005) (setting out elements of this tort).[2]
It is undisputed that Couch had an unqualified right to discharge Wozniak as her legal representative with or without cause and to either retain other counsel or act herself. Salem Realty Co. v. Matera, 384 Mass. 803, 804 (1981). See Herbits v. Constitution Indemnity Co., 279 Mass. 539, 542 (1932). Generally, the discharge of the attorney terminates the contract and, in the absence of a showing of substantial performance or that the discharge was in bad faith, limits the attorney’s recovery from the client to the fair and reasonable value of his or services in quantum meruit. Craft v. Kane, 51 Mass. App. Ct. 648, 653 (2001). There is no allegation in this case that Couch’s discharge of Wozniak was in bad faith, or that their contract for legal representation had been substantially performed. If Couch had merely become dissatisfied with Wozniak and discharged it following a decision to retain the Gilmore firm, no actionable wrong would have been committed by Gilmore.
There is a reluctance on the part of appellate courts to impose liability in tort for interference with advantageous relations when a client simply decides to turn to another lawyer or chooses to deal directly with one representing the opponent instead of the client’s own counsel. See Tauro v. General Accident Fire & Life Assurance Corp., 297 Mass. 234, 235 (1937) (settlement made directly between the client and the insurer induced by the insurer was not a breach of the attorney-client contract); Herbits v. Constitution Indem. Co., 279 Mass. 539, 541-542 (1932) (influencing the attorney’s client to settle the case directly with the insurer does not constitute the tort of intentional interference with advantageous relations). In Walsh v. O’Neill, 350 Mass. 586 (1966), the Supreme Judicial Court characterized cases like Tauro and Herbits as examples of a refusal to extend to the attorney-client relationship the principle that interference with an existing business relationship, if malicious or without justification, may be the basis for recovery in tort. Walsh, supra at 589-590. The reason suggested is the significant public policy that a client should at all times have the freedom to choose or to reject an attorney. To put a lawyer to whom a client resorts for a second opinion at risk of tort liability might have a chilling effect on the exercise of the client’s unfettered right to choose.
There is, we think, a strong public policy to assure one in need of legal help freedom to select an attorney, to change attorneys, and to seek and obtain advice as to the competency and suitability of any attorney for the particular needs of the client.
*52 Id. at 590. Of course, if the interferer resorts to means which are themselves a recognized basis for liability in tort, such as defamation, it is that conduct which may be the basis for liability; the loss of the business relationship is then merely one element of any damages recovered. It should be noted that no such allegation is made in Wozniak’s claim for intentional interference herein.
There was no error in the trial court’s Rule 12(b) (6) dismissal of the count for intentional interference with advantageous relations.
5. Unjust Enrichment. This count alleges, in substance, that Wozniak performed valuable legal services for Couch while employed as her attorney; that Gilmore made use of the file and work product generated by Wozniak, which contributed to the $25,000.00 settlement reached; and that Gilmore, by refusing to compensate Wozniak for the fair value of its services, has been unjustly enriched at Wozniak’s expense. We conclude that this count sets forth a claim for which relief may be granted and that its dismissal was, therefore, error.
The recent case of Malonis v. Harrington, 442 Mass. 692 (2004), is remarkably similar to Wozniak’s claim for unjust enrichment in this case. The Malonis Court held on the record before it that all of the parties (i.e., the two lawyers and the client) had a “shared expectation” that all the attorneys’ fees would be paid out of the contingent fee recovered by the attorney who effected the settlement. Id. at 697. Starting with the notion that the right to discharge an attorney with or without cause is unconditional and that the termination of the first attorney discharged the express contract embodied in the contingent fee agreement, the Court asserted that the first attorney had a right to be compensated for the fair and reasonable value of his services under a theory of quantum meruit to prevent unjust enrichment. Id. at 701. See Salomon v. Terra, 394 Mass. 857, 859-860 (1985). Emphasizing the reasonable expectations of all parties that the second attorney assumed responsibility to see that the first attorney’s fee was paid, the Court pointed to the written requests for an itemized bill as evidence of the “shared expectation.” Malonis v. Harrington, supra at 699. Clearly, a client does not expect to pay twice for the same representation. There is a duty of full disclosure to the client where there is a change of attorneys during the course of the legal representation. Id. at 701-702. The question of the fair and reasonable value of the services of the first attorney is one of fact.
That part of the motion judge’s order dismissing Count IV for unjust enrichment is vacated, and the case is returned to the Wrentham Division for a hearing. on the merits on Wozniak’s claim for unjust enrichment. As to all other complaint counts, the order of dismissal is affirmed.
So ordered.

 In undertaking this analysis, we derive scant assistance from Wozniak’s brief, which consists largely of conclusory assertions of trial court error without citation of supporting legal authority. The brief barely rises to the level of what may be deemed acceptable appellate argument. Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4); Adoption of Kimberly, 414 Mass. 526, 536-537 (1993); Gaffney v. Contributory Retirement Appeal Board, 423 Mass. 1, 6 n.4 (1996).

 The complaint lacks any detail as to what, if any, improper means were used. During oral argument, Wozniak’s counsel suggested that these might appear after discovery was conducted. Rule 11(a) of the Mass. R. Civ. P. provides in part that an attorney’s signature on a pleading constitutes a certification by that attorney that he or she has read the pleading and that, to the best of his or her knowledge and belief, there are good grounds to support it. The contention that perhaps discovery will yield something useful in furnishing evidence of an essential element of a tort for which recovery is sought falls short of the responsibility imposed on counsel by Rule 11 (a). While the assertion of a vague or murky claim might be deemed sufficient to withstand attack under Rule 12(b) (6), the absence of a good faith factual basis for such claim violates Rule 11 (a).