NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-45                                          Appeals Court

     BOURGEOISWHITE, LLP  vs.  STERLING LION, LLC, & another.[1]


                        No. 16-P-45.

     Worcester.     December 14, 2016. - March 3, 2017.

        Present:  Kafker, C.J., Grainger, & Sullivan, JJ.


Practice, Civil, Attorney's fees, Summary judgment, Waiver.
     Damages, Attorney's fees, Breach of contract.  Contract,
     Attorney, Performance and breach, Waiver.  Attorney at Law,
     Attorney-client relationship, Fiduciary duty.  Waiver



     Civil action commenced in the Superior Court Department on
September 22, 2014.

     The case was heard by Shannon Frison, J., on a motion for
summary judgment.


     Camille F. Sarrouf for the defendants.
     Samuel J. Miller (Roy A. Bourgeois also present) for the
plaintiff.


     KAFKER, C.J.  This appeal arises from a fee dispute between

a law firm and its former clients.  The plaintiff law firm,

BourgeoisWhite, LLP, brought this action against the defendants,

_____

     [1] David G. Massad.

Sterling Lion, LLC, and its owner, David G. Massad, alleging breach of contract and unjust enrichment following the plaintiff's representation of the defendants in an employment dispute. The judge granted the plaintiff's motion for summary judgment, determining that the plaintiff was owed the $83,681.84 amount sought in the complaint, including $29,944.45 in "professional courtesy credits" that the plaintiff extended and then rescinded, plus prejudgment interest.[2] We conclude that the undisputed facts establish that the $29,944.45 in credits was written off by the plaintiff law firm and thus waived. Summary judgment therefore should have been granted in favor of the defendants with respect to the credits. We further conclude that the defendants have failed to identify any factual disputes as to the reasonableness of the remaining fees, because they rely solely on unsupported and conclusory assertions about the representation. We therefore remand for the entry of summary judgment in favor of the plaintiff in the amount of the fees sought, less the credits.

Background. The following undisputed facts are set forth in the summary judgment record. Massad owns Sterling Lion, an Internet-based company that helps homeowners sell their homes without a broker. Roy Bourgeois, one of the plaintiff's

---

[2] With the addition of prejudgment interest, judgment entered for the plaintiff in the amount of $99,897.79.

partners, had known Massad for many years and previously represented him in unrelated matters.

In January, 2012, a former business associate, Dennis Craig, sued Massad and Sterling Lion for alleged violations of the Massachusetts Wage Act, G. L. c. 149, § 148. Massad hired Bourgeois to represent them in the matter. Bourgeois sent Massad an engagement letter listing the hourly rates for the plaintiff law firm, which ranged from $125 to $330 per hour, and specified that Massad would receive monthly bills. Bourgeois drafted an answer and asserted several counterclaims relating to unpaid promissory notes by Craig. Bourgeois noted that he did not "pull any punches" in the pleadings because he believed Craig was "caught red-handed" and had fabricated the theory that he was an employee "solely as a basis to not pay his promissory note[s]."

The plaintiff's first bill, dated February 8, 2012, contained a twenty percent "professional courtesy credit." Over the next year, Massad received and paid subsequent bills without any discounts.[3] In April, 2013, Massad received another "professional courtesy credit" of $2,330. Bourgeois stated in a letter accompanying the bill, "I know you hate getting these bills (and frankly I hate sending them to you), but I did issue

_____

[3] During this time, Massad paid approximately $30,000 in fees.

a fairly substantial discount simply because I think the case is really unfair to you."

Massad's next bill contained a similar discount of $3,486. Bourgeois stated that the bill, which totaled $8,250, would "hopefully" be "the last of the big bills" on the matter. He explained that he gave the "very substantial" credit "[s]imply because [Massad] w[as] spending so much money on th[e] problem."

Massad also received discounts on his September and October, 2013, bills. In a letter accompanying the October bill, Bourgeois stated, "I gave you a twenty percent courtesy credit discount simply because I am bothered by the amount of money you are spending on this case, and I am trying to be fair to both of us." In another letter, Bourgeois noted, "Obviously, we are not going to pay [Craig] a dime, but the likelihood that we would ever recover the amount that he owes you is virtually nil."

When Massad received his January, 2014, bill, he was "upset" with how much time an associate at the plaintiff law firm had spent on the case and the lack of specificity as to what the associate was doing.[4] Bourgeois told Massad to "throw away" that bill. Massad testified that he did not dispute any

---

[4] Massad testified, "I don't even know what anybody was doing and why. . . . I get a bill that says review and review and review and review and review, and there's nobody doing anything because . . . nothing is happening."

other bill up until this point, but may have expressed concern with how expensive the case was getting at various points throughout the representation.

The employment dispute went to trial on March 10, 2014, and resulted in a verdict unfavorable to Massad and Sterling Lion. Massad's next bill, dated March 26, 2014 (March bill), contained a credit in the amount of $7,944.45, which represented "all of the lawyers' time (including [his] own)" on the January bill, which Bourgeois had told him to "throw away."[5] That work, Bourgeois explained, was "now free of charge." Massad was charged only $884 for "actual out of pocket expenses" for January.

The March bill also contained a $22,000 "professional courtesy credit" for work completed in February and March, including the trial.[6] In a letter accompanying the bill, Bourgeois wrote, "Even though I wrote off all of the January bill I still decided to give you a very substantial discount on the February/March bill. I did this because you are a friend in a bad situation and I am not looking to make a profit from that. On the other hand, I am not looking to lose money in the situation either and I think that the . . . substantial courtesy

---

[5] This is the first of the credits that the plaintiff would later seek to rescind.

[6] This is the remainder of the credit that the plaintiff sought to rescind.

credit coupled with the complete write off of the [January] bill is more than fair. . . . That . . . consumes more than all of my profit on this matter." With the credits, the March bill totaled $48,316.

Thereafter, although Massad continued to receive bills for posttrial work, he stopped paying the bills in a timely manner. Massad testified that he was dissatisfied with how the case was handled at trial.[7] Although Massad had not yet paid the March bill, Bourgeois issued a fifty percent credit on the May bill, stating that he tried to reach a result that was "fair" to Massad.

Massad made one $10,000 payment in May, 2014. In July, Bourgeois asked Massad to "make payment on the large outstanding balance," and issued a twenty percent credit on the July bill. Bourgeois emphasized that he had "done a very large amount of work" for Massad and discounted all of his profit. In a letter accompanying the August bill, Bourgeois again requested payment of the balance, which had amassed to over $50,000. On August 7, Bourgeois sent a follow-up letter, noting that he had "worked hard for [Massad] on this difficult case and . . . treated [him]

---

[7] Massad testified, "Instead of handling the case and going after the problem, we went after [Craig] . . . and beat him to death two days . . . on the stand. . . . Drove him to nothing. Had nothing to do with the case. . . . I think he had the jury crying for the poor guy." Massad did not, however, attempt to find another lawyer for the posttrial work.

as a friend."  Massad agreed to allow Bourgeois to stop representing the defendants in a telephone call that day. Massad made one $5,000 payment at the end of August, and Bourgeois subsequently withdrew as counsel.

In September, Bourgeois sent Massad a final bill that reversed the $29,944.45 in credits from the March bill, and requested payment in the amount of the outstanding balance: $83,681.84.  Bourgeois explained:  "The reason for those credits is no longer valid.  We give professional courtesy credits to long-term clients who pay their bills, and you have neither paid your bills nor responded to any of my letters . . . relat[ing] to your unpaid bills."  The plaintiff filed a complaint seeking $83,681.84.

Following discovery, the judge granted summary judgment in favor of the plaintiff in that amount.  The judge cited the hourly rates in the engagement letter, and concluded that the "gratuitous discounts" on the March bill "d[id] not affect the validity of the contract."[8]

Standard of review.  Summary judgment is appropriate "if and only if there is no genuine issue as to any material fact." Reporter's Notes to Rule 56(c), Massachusetts Rules of Court,

---

[8] The judge explained, "Those credits and discounts are not part of the contract itself and cannot be demanded by the client . . . .  Even in the uncommon occurrence of the attorney withdrawing such discounts and credits, the contract between the parties for the respective hourly rates still stands."

Rules of Civil Procedure, at 99 (Thomson Reuters 2016) (quotation omitted).  We conclude that there is none in the instant case.

Discussion.  1.  Reversal of "professional courtesy credits."  In order to decide this case, we must review a law firm's obligations, both contractual and fiduciary, to its clients regarding the fees.  As the Restatement (Third) of the Law Governing Lawyers § 16 comment f, at 149 (2000), explains, "[c]ontracts generally create or define the duties the lawyer owes the client."  However, "[a]ttorneys . . . should never lose awareness that, in matters of fees, attorneys are fiduciaries who owe their clients greater duties than are owed under the general law of contracts."  Malonis v. Harrington, 442 Mass. 692, 702 (2004) (quotation omitted).  See Spilker v. Hankin, 188 F.2d 35, 39 (D.C. Cir. 1951) ("Fee contracts between attorney and client are a subject of special interest and concern to the courts.  They are not to be enforced upon the same basis as ordinary commercial contracts").

The defendants claim that the plaintiff cannot reverse the $30,000 in credits from the March bill because Bourgeois did not indicate that the credits were conditional.[9]  We agree.  As

---

[9] The defendants also claim that a genuine issue of material fact exists as to the amount of fees owed to the plaintiff, because the defendants hired Bourgeois personally, rather than his law firm.  This argument has no merit.  The engagement

explained in more detail below, Bourgeois unconditionally "wrote off" those fees, and thus waived his right to them as a matter of contract law. His belated attempt to recoup the fees would also not comport with the "highly fiduciary nature" of the lawyer-client relationship. Malonis, 442 Mass. at 700. Summary judgment therefore should have been granted for the defendants, not the plaintiff, with respect to the credits. See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002) ("Summary judgment, when appropriate, may be rendered against the moving party"); Reporter's Notes to Rule 56(c), supra ("Because by definition the moving party is always asserting that the case contains no factual issues, the court should have the power, no matter who initiates the motion, to award judgment to the party legally entitled to prevail on the undisputed facts"); Perseus of N.E., MA, Inc. v. Commonwealth, 429 Mass. 163, 168 (1999) (reversing summary judgment in favor of moving party and remanding for entry of summary judgment in favor of nonmoving party); Beatty v. NP Corp., 31 Mass. App. Ct. 606, 613 (1991) (affirming grant of summary judgment in favor of client because

---

letter, dated January 19, 2012, lists the hourly rates for various members of the firm, and encourages Massad to discuss any concerns he has about the arrangement with Bourgeois. Massad did not raise any concerns about someone other than Bourgeois working on the case until February, 2014. At that point, Massad had already received over two years' worth of monthly bills, all of which listed many hours spent on the matter by the same associate (and a paralegal).

undisputed facts established that law firm was not entitled to $721,888 "premium" fee when law firm moved for summary judgment; "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims").  See also Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453, 460-461 (2006) (affirming sua sponte grant of summary judgment in favor of nonmoving party).

Under the common law of contracts, waiver is the "intentional relinquishment of a known right."  Dynamic Mach. Works, Inc. v. Machine & Elec. Consultants, Inc., 444 Mass. 768, 771 (2005) (quotation omitted).  Waiver may be express or "inferred from a party's conduct and the surrounding circumstances."  Id. at 774 (quotation omitted).  Lawyers may waive a client's duty to pay a fee, and are generally "well positioned to appraise a waiver of a client's duties to them." Restatement (Third) of the Law Governing Lawyers, supra at § 19(2) & comment d, at 166.[10]

In the present case, Bourgeois, by his own words, expressly "wrote off" and waived approximately $30,000 in fees.  See Dynamic Mach. Works, Inc., 444 Mass. at 771.  See also In re Vernon-Williams, 343 B.R. 766, 809 (E.D. Va. 2006) (referring to discounted fees as "waive[d]"), reversed in part on other

_____

[10] The defendants raised waiver as an affirmative defense in their answer.

grounds, Boleman Law Firm, P.C. v. United States, 355 B.R. 548 (E.D. Va. 2006). The write-offs were described by Bourgeois in the bills as "professional courtesy credits." These credits encompassed work completed by one associate that had generated questions and criticism by Massad. Bourgeois could not have been more explicit about the waiver for that work, telling Massad that he should "throw away" that bill, as the work was now "free of charge." See Brokers' Choice of America, Inc. vs. NBC Universal, Inc., U.S. Dist. Ct., No. 09-cv-717 (D. Colo. Aug. 15, 2011) (attorney's "written off fees essentially decreased the attorneys' rate and should not be charged"); Ellenoff Grossman & Schole, LLP vs. Rosenberg, U.S. Dist. Ct., No. 13-cv-7022 (S.D.N.Y. Apr. 16, 2015) (law firm could not retract ten percent "courtesy discount" on bill after "unilaterally and voluntarily reducing its bill").

Although Bourgeois belatedly attempts to characterize the credits as conditional on Massad's staying current on his bills, there is nothing in the language of the billing letter to support this contention. Nor is there anything in Bourgeois's affidavit suggesting that he ever communicated such a condition to Massad prior to his September, 2014, letter revoking the credits.[11] See Hendrickson v. Sears, 365 Mass. 83, 90 (1974)

---

[11] Bourgeois's affidavit, dated August 18, 2015, states only that the credits "were contingent upon [Massad] staying current

("The attorney owes his client a duty of full and fair disclosure of facts material to the client's interests"); Beatty, 31 Mass. App. Ct. at 612 ("[T]he meaning of a written document, if placed in doubt, is construed against the party that wrote it . . . and the principle surely counts double when the drafter is a lawyer writing on his or her own account to a client").

There is also nothing in the parties' conduct or surrounding circumstances to suggest that the credits were conditional on Massad paying his bills in a timely manner.  The write-offs were given in the context of a difficult ongoing representation where both sides were "bothered" by the amount of legal fees.  Massad had also previously received numerous similar credits over the course of two years, and Bourgeois never described those credits as conditional or attempted to revoke them.  Even after the credits at issue had been given and Massad had fallen considerably behind in his bills, Bourgeois gave two additional "professional courtesy credits" in the amounts of fifty and twenty percent.  Thus, as Massad fell behind in his bills, Bourgeois did not warn him that the credits could be reversed, but instead gave additional credits and

on his bills and making all payments," not that he communicated such a condition to Massad prior to his September, 2014, revocation.  Moreover, nothing in Bourgeois's billing letters or affidavit alludes to any oral conversations with Massad about the credits being conditional.

simply requested payment of the balance.  Massad would therefore have no reason to believe that the $29,944.45 in credits was conditional, and there is no genuine issue of material fact on this point.  See Restatement (Third) of the Law Governing Lawyers, supra at § 18(2) (contract between lawyer and client construed "as a reasonable person in the circumstances of the client would have construed it").[12]

Ethical principles governing the lawyer-client relationship confirm this conclusion.  As previously explained, lawyers owe fiduciary duties to their clients that exceed their contractual obligations.  Beatty, 31 Mass. App. Ct. at 612.  Unlike the traditional contractual relationship, the lawyer-client relationship exists for the benefit of the client, Restatement (Third) of the Law Governing Lawyers, supra at § 16 comment c,

_____

[12] The judge apparently interpreted the credits as modifications to the contract, thus requiring consideration under traditional contract law.  See Tri-City Concrete Co. v. A. L. A. Constr. Co., 343 Mass. 425, 427 (1962); Alperin, Summary of Basic Law § 16.7 (4th ed. 2009) ("[A]ny modification of a contract [must] be supported by a new and valid consideration because a party who promises to perform what he already is legally bound to do suffers no legal detriment.  This is the 'pre-existing duty rule'").  Because "a waiver may be effectuated by one party," and "a modification is the result of bilateral action of both parties," the credited bills and accompanying letters, not responded to by Massad, are more properly characterized as waivers.  Dynamic Mach. Works, Inc., 444 Mass. at 771-772 (quotation omitted).  In any event, however, consideration likely existed for the reduction in fees, because Massad was "upset" with how much time an associate was spending on the case and how expensive the fees were getting on a case he considered unfounded.

and requires "[u]nflinching fidelity to [the client's] genuine interests." Berman v. Coakley, 243 Mass. 348, 354 (1923). Attorneys are therefore "held to a high standard of fair dealing when entering transactions with their clients,"[13] Pollock v. Marshall, 391 Mass. 543, 555 (1984), and must demonstrate that such transactions are fair and equitable to their clients.[14] See Hill v. Hall, 191 Mass. 253, 262 (1906) ("It is a well settled rule . . . that the attorney who bargains with his client in a matter of advantage to himself must show . . . that it was in all respects fairly and equitably conducted"); Pollock, 391 Mass. at 559 (issue in fee dispute was "how fairly and equitably the [challenged] transaction was conducted").

As such, reversal of the professional courtesy credits in this case would not comport with the "highly fiduciary" nature of the lawyer-client relationship. Malonis, 442 Mass. at 692. This type of belated attempt by a fiduciary to claw back fees that were previously "written off" would not be fair and

---

[13] This is especially so once the representation has already begun, because the attorney has gained the client's trust and confidence. See Saggese v. Kelley, 445 Mass. 434, 443 (2005) (discussing inherent burden of changing lawyers during representation); Restatement (Third) of the Law Governing Lawyers, supra at § 18 comment e (same).

[14] See also Restatement (Third) of the Law Governing Lawyers, supra at § 18(a) (client may avoid change to contract with lawyer if change is made beyond reasonable time after representation has begun unless lawyer shows that change was "fair and reasonable to the client").

equitable to the client -- the party for whom the relationship exists.[15] See Goldman v. Kane, 3 Mass. App. Ct. 336, 342 (1975) (attorney who made advantageous loan to client "breached his fiduciary duty," because "fundamental unfairness" of loan was "self-evident"); Beatty, 31 Mass. App. Ct. at 612-613 ($721,888 "premium" billing inconsistent with agreement to bill on hourly basis and violated fiduciary duty owed to client). We therefore conclude that the defendants, not the plaintiff, should have been granted summary judgment with respect to the $29,944.45 in credits.

2. Reasonableness of fees. Summary judgment was, however, properly granted for the plaintiff on the issue of the reasonableness of the remaining fees. The defendants have failed to raise a genuine issue of material fact with respect to the reasonableness of those fees. The defendants argue that they were billed for duplicative and "legally unsound" motions, and that the trial was over staffed. Our review of the record indicates that the allegedly duplicative motions predate the

---

[15] We note that the rules of professional responsibility set strict requirements for communications between a lawyer and client regarding fees. See Mass.R.Prof.C. 1.4(b), as appearing in 471 Mass. 1319 (2015) (lawyers must explain matters to their clients "to the extent reasonably necessary to permit the client to make informed decisions regarding the representation"); Mass.R.Prof.C. 1.5(b)(1), as appearing in 463 Mass. 1302 (2012) ("Any change[] in the basis or rate of the fee . . . shall . . . be communicated in writing to the client" [emphasis added]). See also Malonis, 442 Mass. at 700 (referencing attorney's "duty to communicate to a client the basis of a fee").

contested bills by nearly a year.  The defendants do not identify which motions are "legally unsound," and we are provided no explanation for why the trial was over staffed, given the complexity of the case and the amount in controversy. More is required for appellate argument.  See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

The judgment is reversed, and a new judgment is to enter in favor of the plaintiff consistent with this opinion, representing the fees sought, less the credits that were "written off," plus statutory interest.[16]

So ordered.

---

[16] We also discern no abuse of discretion in the judge's decision not to delay the issuance of her decision on summary judgment to allow the defendants to take the deposition of Bourgeois.  The discovery deadline had passed, and the defendants had already been defaulted once for their failure to timely respond to the complaint.