In the Matter of the Discipline of an Attorney.

Suffolk. January 7, 2008. - April 11, 2008.

Present: Marshall, C.J., Greaney, Spina, Cowin, Cordy, & Botsford, JJ.

*Attorney at Law,* Disciplinary matter, Contingent fee agreement, Informal admonition, Lien.

In the circumstances of a bar discipline case, certain challenged terms of a contingent fee agreement did not warrant the imposition of discipline, where those terms did not implicate Mass. R. Prof. C. 1.8 (a) or (j) [138-140]; where the attorney's failure to explain to the client the terms of his contingent fee agreement did not violate Mass. R. Prof. C. 1.4 (b) [140-142]; and where Mass. R. Prof. Conduct 1.5 did not bar a lawyer from negotiating a term in a contingent fee agreement providing that on discharge by the client, the attorney would be entitled to recover the greater of the reasonable value of his services or one-third of any settlement offer made up to that point, and the record did not indicate that the attorney actually recovered a fee that exceeded a quantum meruit recovery [142-144]; however, this court referred to its standing advisory committee on the rules of professional conduct certain issues regarding contingent fee agreements [144-145, 148].

In a bar discipline case, the attorney's violation of Mass. R. Prof. C. 8.4 (c) and (h) by publicly asserting (in letters to insurers) a lien under G. L. c. 221, § 50, on a client's potential recovery when the attorney knew he had no right to do so [146-147], as well as his violation of Mass. R. Prof. C. 1.15 (b) and Mass. R. Prof. C. 1.4 by failing to notify and inform his client promptly about his receipt of personal injury protection funds for the client [147], warranted an admonition [147-148].

In a bar discipline case, the attorney's refusal to respond to requests from a former client's successor lawyer for an accounting of the attorney's time and expenses in order to determine the appropriate fee to which the attorney would be entitled did not provide a basis for discipline, though case law decided subsequent to the attorney's representation of the client, and after the successor attorney achieved a settlement on behalf of the client, indicated that the better practice in such cases is to respond to such requests. [148]

Information filed in the Supreme Judicial Court for the county of Suffolk on March 28, 2006.

The case was heard by *Ireland,* J.

*Roger Geller,* Assistant Bar Counsel.

*Roy A. Bourgeois* (*George L. Dresser* with him) for the respondent.

BOTSFORD, J. Bar counsel appeals from the decision of the single justice dismissing the petition for discipline of an attorney. Principally at issue is the propriety of certain provisions in the attorney's form contingent fee agreement that go beyond the terms of the model contingent fee agreement set out in the Massachusetts Rules of Professional Conduct. Bar counsel also challenges the attorney's conduct in misrepresenting the existence of a statutory lien pursuant to G. L. c. 221, § 50, in failing to notify one client promptly of his receipt of personal injury protection (PIP) funds, and in refusing to provide another client's successor counsel with a statement of his reasonable time and expenses after his discharge by the client.

We conclude that the attorney committed professional misconduct in knowingly misrepresenting on several occasions to insurers the existence of a statutory lien under G. L. c. 221, § 50, in his favor, and in failing to notify and inform his client promptly about his receipt of PIP funds for the client. We further conclude that an admonition is the appropriate discipline for this misconduct.

In the circumstances of this case, we disagree with bar counsel's claims that discipline should be imposed because of the challenged terms of the attorney's contingent fee agreement. However, looking to the future, we doubt whether it is appropriate for a contingent fee agreement to contain a provision — as the attorney's agreement did in this case — giving a lawyer, on discharge by the client before termination of the matter for which representation was sought, a right to recover an amount greater than the fair value of the lawyer's services and expenses up to the date of discharge. In addition, to the extent that a lawyer includes terms in a contingent fee agreement that materially depart from those in the model contingent fee agreement included in Mass. R. Prof. C. 1.5 (f), as amended, 432 Mass. 1302 (2000),[1] we conclude that the lawyer should explain those terms specifically to the client, and should obtain the client's written consent to them. We refer these issues to the standing advisory committee on the rules of professional conduct.

1. *Background.* The procedural background of this case is as

---

[1]The 2000 amendment is not in any way relevant to this case.

follows. In January, 2003, bar counsel filed a petition for discipline against the attorney, charging professional misconduct in relation to his representation of three personal injury clients under contingent fee agreements entered into between the attorney and each of the clients. A special hearing officer (hearing officer) appointed by the Board of Bar Overseers (board) conducted fourteen days of hearings and issued a report in March, 2004; the hearing officer recommended dismissal of the petition. Bar counsel appealed to the board. In October, 2005, the board issued a memorandum of decision and voted to adopt the hearing officer's findings of fact, but to modify his conclusions of law with respect to the attorney's intentionally false assertion of a statutory lien on certain settlement proceeds under G. L. c. 221, § 50, and to resolve the petition for discipline by admonition of the attorney.[2] The board concluded that the attorney's false assertion of the lien violated Mass. R. Prof. C. 8.4 (c), 426 Mass. 1429 (1998) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and Mass. R. Prof. C. 8 (h), 426 Mass. 1429 (1998) (conduct adversely reflecting fitness to practice law). At bar counsel's request, the board filed an information in the county court on March 28, 2006. After hearing, a single justice issued an order adopting the recommendation of the hearing officer and dismissing the petition for discipline.

We summarize the findings of the hearing officer that are relevant to this appeal.[3] The attorney was admitted to practice in the Commonwealth in 1961. From 1998 to 2003, he had a high-volume practice, concentrating in motor vehicle accident and other personal injury cases and regularly maintaining active files for 1,800 to 2,000 clients. He employed four attorneys and twelve secretaries.

The attorney used a form contingent fee agreement during those years. It provided that the attorney would be compensated by being paid one-third of any recovery obtained for the client (plus reasonable expenses and disbursements), and specified

---

[2]See Rule 3.5 of the Rules of the Board of Bar Overseers (2008).

[3]The hearing officer heard evidence concerning the three clients of the attorney who were included in bar counsel's petition for discipline, and recommended dismissal of the entire petition. On appeal, bar counsel only addresses the attorney's conduct in relation to two of these clients, and therefore we similarly limit our consideration to those clients.

that no counsel fee was to be paid if there was no recovery. The agreement also contained the following paragraphs, appearing as its final provisions before the signature lines:

> "6. If the attorney is discharged by the client prior to the conclusion of this representation, the attorney is entitled to be then compensated for his reasonable expenses and disbursements. Further, the attorney is to be compensated for the fair value of the services rendered to the client up to the time of discharge or one third of any settlement offer that had been made at time of discharge, whatever is greater, and hereby authorize [*sic*] the applicable insurance carrier to add the name of the attorney as payee on any draft issued by said insurance carrier, but the amount of the fee shall not be due to the attorney until the subject matter litigation is concluded pursuant to Paragraphs 2 and 3 above.[4]

> "7. In addition to any statutory liens, client grants attorney an assignment and general lien as security for the payment of legal fees and expenses of the attorney and said lien is to continue in the event the services of the attorney are terminated by either party.

> "8. If the client and attorney are unable to resolve their differences on the question of any fee, and or expenses, they hereby agree to make a good faith effort at resolving their disputes. If the dispute cannot be resolved, the client and attorney agree to place the matter before the Fee Arbitration Board of the Worcester County Bar Association and agree to be bound by the decision.

> "This agreement and its performance are subject to Rule 1.5 of the Rules of Professional Conduct adopted by the Massachusetts Supreme Judicial Court.

> "I HAVE READ THE ABOVE AGREEMENT BEFORE SIGNING IT, AND I, _____ HEREBY ACKNOWLEDGE THAT I HAVE RECEIVED A COPY OF THIS CONTINGENT FEE AGREEMENT THIS ___ DAY OF _____ 20___."

---

[4]Paragraphs 2 and 3 of the agreement specified that no attorney's fees are to be paid if there is no recovery.

During the same years, the attorney followed a practice of presenting each new automobile accident client with a form document called "client authorization" (client authorization form) and obtaining the client's signature on it. The client authorization form allowed the attorney to (1) execute documents, including PIP benefit applications and medical payment forms, on the client's behalf; (2) indorse the client's name on any checks received for PIP or medical payments; and (3) hold the funds in the attorney's interest on lawyers' trust account (IOLTA) pending a final settlement or trial of the client's case. In addition, the client authorization form allowed the attorney to charge and take a fee from any PIP or medical payments received on behalf of the client. The form also authorized the attorney to take a fee for "processing" the PIP and medical payment benefits on the client's behalf and stated that the fee was to be determined after the payments were collected.

On September 28, 1998, Jennifer Gallant retained the attorney to represent her in connection with a recent car accident in which she had been injured; Gallant was nineteen years old. On that date, she signed the attorney's form contingent fee agreement that contained all the provisions quoted above. Thirty days later, Gallant discharged the attorney, after telephoning him on several occasions in an effort to communicate about her case. She asked the attorney to forward her file to her new attorney, Scott Sinrich. The attorney sent the file to Sinrich on November 11, 1998, accompanied by a bill for $49.86 for expenses incurred on behalf of Gallant, and a request to be contacted in order to arrange for the division of legal fees when Gallant's case was concluded. On that same date, the attorney sent a letter to Safety Insurance Company (Safety) in which he asserted a statutory lien under G. L. c. 221, § 50, in relation to any recovery paid to Gallant, and a "general contractual lien" based on his contingent fee agreement with Gallant. At the time he sent the letter to Safety, the attorney knew he did not have a statutory lien on Gallant's recovery because he had not filed a lawsuit on her behalf.

Sinrich filed suit in the Superior Court on behalf of Gallant in March, 1999. After remand to the East Brookfield Division of the District Court Department, and removal of the case back to the Superior Court by the defendant, the parties settled the case in late 2000 for $20,000, which represented Safety's policy limits.

Safety issued a check for $20,000, on December 1, 2000, payable to Gallant, Sinrich, and the attorney. Sinrich, to whom the check was sent, asked the attorney to indorse the check; he refused to do so until he received confirmation that he would be compensated for his services to Gallant. In a letter dated December 21, 2000, Sinrich asked for the third time to be provided with information about the attorney's actual time and expenses on the Gallant matter.[5] The attorney responded through counsel that as a condition of his indorsing the Safety check, he receive compensation of at least one-third of the total contingent fee generated from the Gallant case, or, in the alternative, that the dispute over the fee be submitted to arbitration before the Worcester County Bar Association fee arbitration board (fee arbitration board). Ultimately, on January 17, 2001, the attorney and Sinrich entered into an escrow agreement to put $6,667 in an escrow account pending resolution of their fee dispute, and the attorney signed the settlement check that had been received from Safety. Gallant then was paid the balance of the check after a deduction for expenses.[6]

Andrew Fairfield retained the attorney to represent him on June 5, 2000, in connection with a car accident two days earlier in which Fairfield had suffered severe injuries. Fairfield signed the attorney's form contingent fee agreement, as well as the attorney's client authorization form. At different points in that month, Fairfield sought and received treatment from a chiropractor and a physical therapy provider. In connection with these treatments, Fairfield signed documents, presented by the two providers, that essentially authorized liens to be placed on any monies that his attorney received on behalf of his client. Each provider sent the attorney a copy of the authorization form that Fairfield had signed. On September 20, 2000, Hanover Insurance Company (Hanover) issued a check payable to the attorney and Fairfield for $8,000, the full amount of PIP benefits

---

[5]Sinrich previously had sent two separate letters to the attorney in late 1998, seeking a statement concerning the attorney's time and expenses; the attorney had not responded to either communication.

[6]As of March 24, 2004, when the hearing officer issued his report, the dispute between the attorney and Sinrich over the division of the fee in the Gallant case was still pending, having been sent to the fee arbitration board. The record does not reveal whether this fee dispute has since been resolved.

available. The attorney deposited the check in his IOLTA account. As of that date, the total amount of Fairfield's outstanding medical bills that had been submitted to the attorney came to $6,023.57. A secretary in the attorney's office contacted Fairfield to make an appointment, and when Fairfield and his wife came into the office on September 25, 2000, one of the other lawyers in the attorney's office met with them and delivered a check to them for $1,976.43, the difference between the $8,000 the attorney had received in PIP benefits and the amount of the outstanding medical bills. It appears, however, that this lawyer did not explain to Fairfield that the check he was receiving represented a partial payment of the PIP benefits that the attorney's office had received on Fairfield's behalf, and that the attorney was holding the balance to pay outstanding medical bills.

On October 30, 2000, after various communications with the attorney, Hanover (which also insured the other driver) offered $20,000 to settle the case, the maximum amount available under the other driver's policy. Fairfield met with the attorney on November 7, 2000, to discuss the settlement offer; this was the first time the attorney had discussed any aspect of the case with Fairfield since June 5, 2000. The meeting ended with a falling out between the attorney and Fairfield, and on November 8, 2000, the attorney sent a certified letter to Fairfield, advising him to obtain new counsel, and that he would take no further action in the case. The letter enclosed a copy of the $8,000 check for PIP benefits that the attorney had received in September, 2000. This was the first notice provided to Fairfield of the attorney's receipt of the PIP funds. Also, on or about the same date, without informing Fairfield, the attorney's office paid out all the remaining PIP funds held in the attorney's IOLTA account on behalf of Fairfield to pay the chiropractor and the physical therapy group.

Fairfield retained another lawyer, Michael Brown, on November 10, 2000. In response to Brown's request, the attorney sent Fairfield's file to him on November 20, 2000, disclosing for the first time that he had used the balance of Fairfield's PIP benefits to pay the bills of the chiropractor and the physical therapy group. On November 21, 2000, and again on March 1, 2001, the at-

torney sent a letter to Hanover, asserting an attorney's lien under G. L. c. 221, § 50, on any recovery paid to Fairfield, as well as a "general contractual lien" as security for the payment of fees and expenses. As had been true with respect to Gallant, the attorney knew that he did not have a valid claim for a statutory lien, again because he had not commenced a court action on Fairfield's behalf. The attorney sent a third letter to Hanover about his "lien" on November 28, 2001.

Ultimately, and while represented by a third lawyer, Robert Flynn, Fairfield and his family agreed to settle their claims against the other driver and Hanover for $20,000, the Hanover policy limit. On January 7, 2002, Hanover issued four checks for $5,000 each, payable to Fairfield, his wife, and on behalf of each of his two children. The attorney was listed as a payee on each of these checks. The attorney refused to indorse any of the checks unless Fairfield and Flynn agreed to place in escrow $6,666 plus $1,075 for expenses, and to submit the dispute over the attorney's fee to arbitration before the fee arbitration board. Flynn, at Fairfield's direction, rejected the attorney's demand. After the attorney filed suit to compel arbitration, arbitration went forward. On February 6, 2003, one month after bar counsel filed the petition for discipline, the arbitrator for the fee arbitration board awarded the attorney $5,866.66 in legal fees, and $844.80 as reimbursement for his costs.

2. *The attorney's contingent fee agreement.* a. *Mass. R. Prof. C. 1.8 (a) and (j).* At the time of the attorney's conduct at issue in this case, the Massachusetts Rules of Professional Conduct authorized contingent fee agreements under Mass. R. Prof. C. 1.5 (c), as amended, 432 Mass. 1301 (2000).[7] Rule 1.5 sets out a model contingent fee agreement that "may be used to satisfy the requirements of [rule 1.5] (c)," and also specifies that the rule's "authorization of this form shall not prevent the use of other forms consistent with this rule." Mass. R. Prof. C. 1.5 (f). Bar counsel argues that although an "ordinary" contingent fee agreement does not do so, see *Sears, Roebuck & Co.* v. *Goldstone & Sudalter*, 128 F.3d 10, 17 (1st Cir. 1997), several of the provisions of the contingent fee agreement used by the

---

[7]The 2000 amendment did not concern any provisions that are relevant to this case.

attorney in this case give the attorney a "pecuniary interest" adverse to his client that comes within the scope of Mass. R. Prof. C. 1.8 (a), 426 Mass. 1338 (1998).[8] In particular, bar counsel focuses on four aspects of the attorney's contingent fee agreement: (1) the provision in paragraph 6 that permits the attorney, on being discharged, to receive the greater of one-third of any settlement offer made up to that time or the fair value of his services and expenses; (2) the separate provision in paragraph 6 authorizing any insurer to add the attorney's name as payee to any check issued by that insurer; (3) paragraph 7, under which the client gives the attorney an assignment and "general lien" as security for payment of his fees and expenses, with the lien continuing after discharge or other withdrawal of the attorney; and (4) paragraph 8, requiring any fee dispute between attorney and client to be subject to mandatory, binding arbitration before the fee arbitration board. Bar counsel further claims that the provisions giving the attorney the right to obtain one-third of any settlement offer made prior to discharge and ·the right to a continuing "general" lien on any recovery violate Mass. R. Prof. C. 1.8 (j), 426 Mass. 1338 (1998), a provision that generally prohibits a lawyer from acquiring "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client."

We agree with the board that these provisions in the attorney's fee agreement do not trigger the protections of rule 1.8 (a), or the prohibitions of rule 1.8 (j). The board is correct that rule 1.8 (a) is generally concerned with business dealings between a lawyer and a client, or the lawyer's acquisition of a "pecuniary interest" adverse to his client, that commence *after* the legal representation begins, see C.W. Wolfram, Modern Legal Ethics § 8.11.3, at 481-482 (1986); the focus of the rule is not on a fee agreement between a lawyer and client that marks the creation of their

[8]Rule 1.8 (a) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1338 (1998), provides: "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client" unless (1) the transaction and its terms are fair and reasonable to a client; (2) the terms are fully disclosed to the client; (3) the client is provided a reasonable opportunity to obtain independent legal advice about the transaction; and (4) the client consents in writing. See Restatement (Third) of the Law Governing Lawyers § 126 (2000).

lawyer-client relationship. See comment [1] to Mass. R. Prof. C. 1.8. See also Restatement (Third) of the Law Governing Lawyers § 126 comment a (2000). Moreover, rule 1.8 (j) expressly excepts reasonable contingent fee agreements from that rule's general prohibition against a lawyer's acquiring a proprietary interest in litigation conducted for the client, see rule 1.8 (j) (2) & comment [7],[9] and rule 1.5 (c) permits attorneys and clients to negotiate specific terms of contingent fee agreements for themselves. See *Cambridge Trust Co.* v. *Hanify & King Professional Corp.*, 430 Mass. 472, 476, 479-480 (1999). See also *Malonis* v. *Harrington*, 442 Mass. 692, 701-702 (2004).[10] While there may be exceptions, we do not view rule 1.8 (a) or (j) as generally limiting or regulating the provisions contained in a contingent fee agreement.

b. *Mass. R. Prof. C. 1.4 (b)*. Rule 1.4 (b) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1314 (1998), provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Bar counsel argues that the attorney violated this rule because he did not explain any of his contingent fee agreement's terms to Gallant or Fairfield[11]; bar counsel

[9]Bar counsel supports her argument that Mass. R. Prof. C. 1.8 (a) and (j), 426 Mass. 1338 (1998), should apply to the challenged terms of the attorney's contingent fee agreement with references to decisions of courts in other jurisdictions and opinions of bar associations in other States. Because Massachusetts law and rules of professional conduct are different from the law in these other jurisdictions, these authorities do not provide pertinent guidance in this case.

[10]Rule 1.8 (j) contains one other exception to the prohibition against a lawyer's acquiring a proprietary interest in a cause of action that the lawyer is litigating for the client: "the lawyer may . . . acquire a lien granted by law to secure the lawyer's fee or expenses." As bar counsel suggests, the phrase "granted by law" generally is understood as a reference to a statutory lien such as G. L. c. 221, § 50, and would not include a lien created by contract. See *Elbaum* v. *Sullivan*, 344 Mass. 662, 663-664 n.1 (1962); J.S. Bolan & K. Laurence, Ethical Lawyering in Massachusetts § 5.7, at 5-20 (Mass. Continuing Legal Educ. rev. 2000). However, the general exception for reasonable contingent fee agreements set out in rule 1.8 (j) (2) appears to permit a lawyer to negotiate a provision for a contractual lien as a term of the parties' contingent fee contract.

[11]The hearing officer made no finding that the attorney or any of his staff explained any of the provisions in the contingent fee agreement or client authorization form to either Jennifer Gallant or Andrew Fairfield. The attorney implicitly argues that explanations were not necessary because the hearing of-

focuses in particular on the agreement's provisions addressing compensation after discharge of the attorney (paragraph 6), a contractual lien (paragraph 7), and mandatory arbitration of any fee disputes between lawyer and client (paragraph 8).

We concur in the hearing officer's and the board's view that the attorney in this case should not be subject to discipline for violating Mass. R. Prof. C. 1.4 (b), because of his failure to explain the terms of his contingent fee agreement.[12] The provisions in that agreement that concern bar counsel are not in themselves so complicated as to put the attorney on notice that in failing to explain each of them specifically, he was at risk of violating his duty of explanation spelled out in rule 1.4 (b). Nevertheless, bar counsel is correct that this case presents a very different factual setting than was at issue in *Cambridge Trust Co.* v. *Hanify & King Professional Corp.*, 430 Mass. at 477-478, where the client was a sophisticated business entity, the contingent fee agreement was "the subject of intense negotiations," and throughout those negotiations, the client was advised by one of its directors who was an experienced and sophisticated lawyer. While rule 1.5 (c) and (f) authorize lawyers to negotiate terms of a contingent fee agreement that go beyond the model version set out in rule 1.5 (f), the highly fiduciary nature of the lawyer-client relationship, see *Malonis* v. *Harrington*, 442 Mass. at 700, leads us to conclude that lawyers should be required to explain specifically the meaning of any terms that differ from the model and to obtain the client's written consent to those provisions. As was certainly true in this case, the terms that a lawyer adds to the model agree-

---

ficer found that Gallant and Fairfield both understood the fee agreements they signed. The hearing officer does state in his report that both clients understood the agreements, but the specific subsidiary findings do not offer affirmative support for this conclusion. With respect to Gallant, the only evidence the hearing officer pointed to was that Gallant had signed the fee agreement immediately below the printed paragraph stating she had read the agreement and received a copy; Gallant herself did not testify, and thus did not indicate whether she actually had either read or understood the agreement before signing it. As for Fairfield, the hearing officer's specific conclusion was that Fairfield and his wife both testified to having read the agreement. Reading the agreement does not necessarily equate with understanding all its provisions.

[12]We consider Mass. R. Prof. C. 1. 4 (b), 426 Mass. 1314 (1998), again, in connection with bar counsel's charge that the attorney failed to provide Fairfield with an explanation of the PIP funds the attorney received. See Part 4, *infra.*

ment in rule 1.5 (f) presumably are intended to protect the lawyer's ability to collect his or her legitimate fee, rather than to advance an independent interest of the client. An explanation of these terms would likely increase the client's understanding of the proposed contractual relationship with the lawyer, and enable the client to make a more informed decision about whether to go forward.[13,14]

c. *Reasonableness.* The conclusion that rules 1.8 (a) and (j) and 1.4 (b) do not apply to the attorney's form contingent fee agreement does not end our inquiry. All contingent fee agreements are subject to the overarching requirement of reasonableness. See *Salem Realty Co.* v. *Matera*, 10 Mass. App. Ct. 571, 574-575 (1980), *S.C.*, 384 Mass. 803 (1981). When a lawyer who has entered into a contingent fee agreement with a client is later discharged or withdraws from the case before the contingency occurs, this court has generally followed the rule that the attorney may be paid only the reasonable value of his services under principles of quantum meruit, rather than recover the contingent fee prescribed by the agreement itself. See *Malonis* v. *Harrington*, 442 Mass. at 696-697 & n.6. Cf. *Liss* v. *Studeny*, 450 Mass. 473, 478-482 (2008) (as general rule, quantum meruit

[13]The decision to require lawyers to explain any materially differing provisions in a proposed contingent fee contract to their clients should not be understood as disapproval of all the terms in the attorney's fee agreement that bar counsel challenges in this case. As discussed *infra*, we have significant concerns about the fee agreement's provision giving the attorney, on discharge, the potential right to be compensated in an amount exceeding the fair value of his services. A provision in a fee agreement that proposes binding arbitration of fee disputes, however, appears consistent with Mass. R. Prof. C. 1.5 & comment [5] ("In the event of a fee dispute, the lawyer should conscientiously consider submitting to mediation or an established fee arbitration service"). And we agree with the board that it is not inherently wrong or improper for a lawyer to negotiate (with explanation) a term in a contingent fee agreement that provides a general, contractual lien on the client's recovery, if any, as security for unpaid fees and expenses. See note 10, *supra*.

[14]We do not address here the implementation of a requirement that lawyers obtain the written consent of their clients to proposed terms in a contingent fee agreement that materially differ from, or add to, those contained in the model agreement set out in rule 1.5 (f). This is one of the issues that we refer to the standing advisory committee on the rules of professional conduct for study. Until the court acts on any recommendations the committee makes on this subject, lawyers at the least should discuss with their clients the specific meaning of any differing terms of a contingent fee agreement that they are proposing.

recovery available to withdrawing or discharged attorney who had contingent fee agreement with client only if contingency did occur). In this case, the attorney's contingent fee agreement provided that on discharge by the client, the attorney would be entitled to recover the *greater* of the reasonable value of his services or one-third of any settlement offer made up to that point.[15] Such a provision has the potential of entitling a discharged lawyer to a fee that exceeds the fair value of his or her work, even though that lawyer is not the one who ultimately settles or tries the matter and thereby brings the original contingency — recovery of funds for the client — into being. Cf. Restatement (Third) of the Law Governing Lawyers § 40 (1) (2000) (lawyer who is discharged before completing services described in fee agreement "may recover the *lesser* of the fair value of the lawyer's services . . . and the ratable proportion of the compensation provided by any otherwise enforceable contract" [emphasis supplied]). It also can burden the absolute right of a client to discharge a lawyer, because the requirement that the discharged lawyer be paid more than the value of his or her services could discourage a subsequent lawyer from taking the case. See *Malonis* v. *Harrington*, 442 Mass. at 697-698 n.7, 700-701. As has been stated, we doubt whether contingent fee agreements should contain any provision entitling the lawyer, as a general matter, to recover more than the fair value of legal services rendered and expenses incurred if the lawyer is discharged by the client before the subject matter of the fee agreement has been completed.[16] In this case, however, where rule 1.5 did not bar a lawyer from negotiating such a term in a contingent fee agreement, and where the record does not indicate that the attorney actually recovered a fee from Gallant or Fairfield that exceeded a quantum meruit recovery, discipline would be

---

[15]The attorney's contingent fee agreement does not expressly foreclose the possibility that if the attorney were discharged by the client, he could seek fees (in quantum meruit or otherwise) even though the client had not recovered funds from a third party. However, the attorney has made no argument that he would be entitled to recover fees in such a circumstance, and his agreement is appropriately read not to allow such a recovery. See *Liss* v. *Studeny*, 450 Mass. 473, 480-481 (2008).

[16]If the client were to discharge the attorney in bad faith, we have recognized that recovery of fees under the contingent fee agreement might be in order. See, e.g., *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993).

inappropriate.[17] Cf. *Matter of the Discipline of Two Attorneys*, 421 Mass. 619, 629 (1996) (because of uncertainty in law concerning duties of attorneys as escrow agents, and in absence of egregious conduct, court declined to find that attorneys violated disciplinary rule prohibiting lawyers from engaging in conduct prejudicial to administration of justice).

3. *Assertion of statutory lien under G. L. c. 221, § 50.* The hearing officer specifically found that on several occasions in connection with his representation of Gallant and Fairfield, the attorney, in letters to insurance companies, asserted an entitlement to a lien under G. L. c. 221, § 50,[18] although he knew that

---

[17]Bar counsel criticizes the provision in the attorney's client authorization form that allows the attorney to determine a legal fee he will charge for the processing of PIP and medical payment benefits after all the benefits are collected. The specific language at issue reads:

> "It is further understood and agreed that the legal fee for processing the so called PIP and Medical Payment benefits shall be determined upon the conclusion and collection of all PIP and Medical Payment Benefits including any attorney's fees awarded by court or settlement and the legal fee to be charged is not a fee which is contingent on the successful collection of said funds."

Bar counsel argues that this provision contradicts Mass. R. Prof. C. 1.5 (b), 426 Mass. 1315 (1998) ("When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation"). However, as bar counsel acknowledges, the attorney was not charged with violating this rule, and therefore we need not decide the issue in the present case. We note, however, that because the attorney's agreement specifies that the fee to be charged for this category of work is not contingent, there seems to be some merit to the claim that it contravenes rule 1.5 (b). The attorney's expert witness testified before the hearing officer that there is reason for and merit to permitting a lawyer to collect a separate fee for the work of collecting PIP payments. We have no basis to disagree with this assessment. However, it would be more clear to the client if a client authorization form such as the attorney's were to spell out the basis on which that fee is to be determined (for example, on an hourly basis or otherwise), even though the amount of the fee would need to wait until the collection work was complete.

[18]General Laws c. 221, § 50, provides in relevant part:

> "From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim

he was not entitled to such a lien at the time.[19] However, the hearing officer concluded that this conduct did not amount to a violation of any disciplinary rule because the client was not harmed. The board disagreed, noting that harm is not a prerequisite to finding a violation of rule 8.4 (c) or (h).[20] The board further pointed out that "[s]anctions have been imposed for precisely this conduct in the absence of harm — and even where the lawyer did not know that the lien did not apply," citing *Matter of Lucier*, 19 Mass. Att'y Discipline Rep. 278 (2003); *Matter of Gustus*, 13 Mass. Att'y Discipline Rep. 245 (1997). We agree. The public assertion of a lien on a client's potential recovery when the lawyer knows he has no right to do so plainly constitutes a misrepresentation and is dishonest; by its very nature, dishonest conduct reflects negatively on the lawyer's fitness to practice law. The attorney in this case wrote letters to insurers on at least three separate occasions in which he wrongfully claimed a statutory lien. The conduct violated rule 8.4 (c) and (h), and the attorney should be sanctioned for the misconduct.[21] We discuss the level of sanction *infra*.

---

or claim, upon the judgment, decree or other order in his client's favor or made in such proceeding, and upon the proceeds derived therefrom."

[19]By the plain terms of G. L. c. 221, § 50, for an attorney to be entitled to file a lien, there must be, among other requirements, "an action, counterclaim or other proceeding in any court," and the attorney must have "appear[ed] for [the] client" in that matter. *Id.* See, e.g., *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 244 (1993); *Northeastern Avionics, Inc.* v. *Westfield*, 63 Mass. App. Ct. 509, 513 (2005). The attorney had not filed or appeared in any action or initiated any other type of legal proceeding on behalf of either Gallant or Fairfield at the time he asserted statutory liens in connection with each of those clients.

[20]Rule 8.4 (c) and (h) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1429 (1998), provides:

"It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; . . . or (h) engage in any other conduct that adversely reflects on his or her fitness to practice law."

[21]This court has stated that a rule sanctioning conduct that "is prejudicial to the administration of justice" needs limiting interpretations to avoid "the risk of vagueness and arbitrary application." *Matter of the Discipline of Two Attorneys*, 421 Mass. 619, 628-629 (1996) (discussing S.J.C. Rule 3:07, DR 1-102 [A] [5], as appearing in 382 Mass. 769 [1981]). The language of rule 8.4 (h), prohibiting a lawyer from engaging in conduct that "adversely reflects

4. *Informing a client about the receipt of PIP funds and payment of medical expenses.* Bar counsel claims that the attorney's seven-week delay in relaying information to Fairfield about his receipt of $8,000 in PIP funds violated Mass. R. Prof. C. 1.15 (b), 426 Mass. 1363 (1998),[22] and his payment of the medical bills without informing Fairfield and without obtaining his client's permission violated Mass. R. Prof. C. 1.4, 426 Mass. 1314 (1998).[23] The board determined that a seven-week delay was not so long as to run afoul of the prompt notification requirement in rule 1.15 (b), and that the attorney's decision to pay these providers what was undisputably owed to them did not contravene any disciplinary rule.

Determination of what is "prompt" will depend on the facts of each case. Cf. comment [6] to Mass. R. Prof. C. 1.15, as appearing in 440 Mass. 1338 (2004).[24] In the case of Fairfield, who sustained "severe" injuries in a car accident, and who came into the attorney's office in order to receive a distribution of funds on account of being out of work, seven weeks does not qualify as "prompt," particularly in light of the facts that (1) the attorney's employee actually met with Fairfield within days of receiving the PIP funds and made an unexplained distribution of some of these funds to him at the time, and (2) when the attorney finally did give notice concerning the full $8,000 of PIP funds he

on his or her fitness to practice law," may raise similar concerns about vagueness, but when the rule is joined with another rule that sanctions more specific conduct, such as rule 8.4 (c), the problem of vagueness diminishes.

[22]As in effect at all times relevant to the petition for discipline, Mass. R. Prof. C. 1.15 (b), 426 Mass. 1363 (1998), required a lawyer to notify a client "promptly" of the receipt of any funds in which the client had an interest. This provision currently appears in Mass. R. Prof. C. 1.15 (c), as appearing in 440 Mass. 1338 (2004).

[23]Rule 1.4 (a) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1314 (1998), requires a lawyer to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information"; Mass. R. Prof. C. 1.4 (b), 426 Mass. 1314 (1998), concerns the obligation to explain matters to a client in order to allow the client to make informed decisions.

[24]This comment, which was not included in the Massachusetts Rules of Professional Conduct in effect during times relevant to this case, provides in relevant part: "How much time should elapse between the receipt of funds by the lawyer and notice to the client or third person for whom the funds are held depends on the circumstances." Comment [6] to Mass. R. Prof. C. 1.15, as appearing in 440 Mass. 1338 (2004).

had received, he had already paid out all of the remaining funds to third parties. In addition, as bar counsel points out, the attorney's unilateral decision to pay the medical providers without any explanation to Fairfield prevented him from understanding the distribution of funds that were intended for his benefit, and precluded him from at least asserting a claim to receive a greater portion of the PIP funds for his undisputed lost wages. In these circumstances, we conclude that the attorney violated rule 1.15 (b), as then in effect, as well as rule 1.4.

5. *Responding to information requests about legal fees.* The final claim raised by bar counsel concerns the attorney's refusal to respond to requests from Gallant's successor lawyer for an accounting of the attorney's time and expenses in order to determine the appropriate fee to which the attorney would be entitled. In *Malonis* v. *Harrington*, 442 Mass. at 699 n.9, we stated that "it would have been better practice" for the discharged lawyer to respond to the successor counsel's requests for information about fees and expenses, and stated that when a lawyer withdraws from a case after discharge, the lawyer should discuss with the client "his or her expectation of being compensated for work performed." *Id.* at 701. We did not, however, find a violation of any rule of professional conduct. The *Malonis* case was decided after the attorney's representation of Gallant, and after the successor counsel achieved a settlement in Gallant's case. In light of this time frame, the attorney's refusal to respond in this case does not provide a basis for discipline.

6. *Sanction.* We have upheld the board's determination that the attorney violated rule 8.4 (c) and (h). Although, in contrast to the board, we have concluded that the attorney's failure to provide prompt notice or information about his receipt of PIP funds on behalf of Fairfield violated rule 1.15 (b), as then in effect, and rule 1.4 (a) and (b), we agree with the board that the appropriate level of discipline in this case is an admonition.[25] With respect to the assertion of the statutory lien, neither the at-

---

[25]The board has imposed admonitions in other, somewhat similar, cases involving attorneys who failed promptly to notify clients or third parties of receipt of checks or funds intended for the clients or parties. See, e.g., Admonition No. 07-45 (2007); *Admonition No. 06-17*, 22 Mass. Att'y Discipline Rep. 886 (2007). Cf. *Matter of Baltas*, 21 Mass. Att'y Discipline Rep. 23 (2005) (public reprimand for conduct in three separate matters involving failure to

torney's clients nor the insurers were harmed by the attorney's conduct. As for the failure to provide prompt notice to and inform Fairfield about the PIP funds, the attorney ultimately did provide Fairfield with a statement explaining the PIP funds, and, as the board noted, the medical providers were unquestionably entitled to be paid for their services to Fairfield. Fairfield had in effect authorized the medical providers to assert liens on monies that his attorney received on his behalf, and in light of this fact, there is no real basis on which to conclude that Fairfield — if he had been provided notice on a timely basis and an explanation concerning the total PIP payments being held by the attorney — likely would have received a greater portion of the available PIP funds for himself.

As this case reflects, issues relating to contingent fee agreements continue to arise. We refer the issues discussed regarding Mass. R. Prof. C. 1.5 to the court's standing advisory committee on the rules of professional conduct. See note 14, *supra*. See also *Malonis* v. *Harrington*, 442 Mass. at 702-703.

The order of the single justice dismissing the petition for discipline dated January 9, 2003, is vacated. Under S.J.C. Rule 4:01, § 4, as appearing in 425 Mass. 1304 (1997), admonitions are issued by bar counsel. Accordingly, on remand to the county court, the matter will be referred with instructions that the attorney be admonished.

*So ordered.*

transmit documents, and failure promptly to disburse settlement funds).